UNITED STATES of America, Plaintiff-Appellee,

v.

Wayne Allen PEDEN, Defendant-Appellant.

No. 77–5030

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

July 21, 1977.

---

\* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409.

Lucien B. Campbell, Federal Public Defender, P. Joseph Brake, Asst. Federal Public Defender, San Antonio, Tex., for defendant-appellant.

John E. Clark, U. S. Atty., LeRoy Morgan Jahn, James E. Bock, Charles J. Muller, III, Asst. U. S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before THORNBERRY, RONEY and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Wayne Peden appeals from the verdict and judgment finding him guilty of transporting stolen, lost, and/or altered credit cards, with fraudulent intent, in interstate and foreign commerce, all in violation of 15 U.S.C. § 1644(b).

He presents three contentions. These are: (1) that 15 U.S.C. § 1644(b) is so indefinite and vague that a conviction under it violates due process of law; (2) that the trial judge abused his discretion in allowing the Government to submit to the jury evidence of other crimes in order to prove the fraudulent intent of the appellant; (3) that his Sixth Amendment rights of confrontation were violated by the introduction into evidence of hearsay statements in the form of business records.

We find his claims to lack merit and affirm.

### (1) Void for Vagueness?

15 U.S.C. § 1644(b) states as follows:

"Whoever, with unlawful or fraudulent intent, transports or attempts or conspires to transport in interstate or foreign commerce a counterfeit, fictitious, altered, forged, lost, stolen, or fraudulently obtained credit card knowing the same to be counterfeit, fictitious, altered, forged, lost, stolen, or fraudulently obtained; . . . shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

Appellant contends that this statute is unconstitutional in that a common man must speculate as to the meaning of the words "fraudulent intent."

The challenged words "fraudulent intent" refer to the specific intent required to convict under the statute. Intent to defraud has often been defined as "the specific intent to deceive or cheat, for the purpose of either causing some financial loss to another, or bringing about some financial gain to one's self." *Beaudine v. United States*, 368 F.2d 417 (5th Cir. 1966); *United States v. Industrial Laboratories Co.*, 456 F.2d 908 (10th Cir. 1972). Devitt and Blackmar, Federal Jury Practice and Instructions, 1977 ed., § 16.05. The trial court instructed the jury to that effect.[1]

■ Due process requires that a criminal statute give fair warning of the conduct which it prohibits. *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and its application violates due process. *Bouie, supra, Lanzetta v. New Jersey*, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939).

■ Applying this standard to the statute at issue, we conclude that the statute gives fair warning of the conduct which it prohibits and that men of common intelligence can readily ascertain its meaning,

particularly in conjunction with the definition of fraudulent intent.

Also, on the facts of this case, it is readily apparent that appellant was apprised of the criminality of his acts. His sole defense was that after using the stolen, lost and/or altered credit cards to purchase over $50,000.00 worth of goods and services in Mexico, his intent in transporting the credit cards back into the United States was to return them, through an intermediary, to the issuing companies in exchange for a reward.[2]

Clearly, the statute was not so vague as to prevent the appellant from formulating his defense to the charges, by denying intent to defraud.

### (2) *Other Crimes and Proof of Intent.*

At the trial, appellant admitted that he knew the credit cards had been altered, that he had procured false identity cards for his use, and that he had actually used the credit cards. Furthermore, he admitted to having caused the credit cards to be taken into Mexico and back to the United States. The only issue was his intent in transporting the cards in interstate and foreign commerce.

■ Since intent was the critical issue in the case, the government sought to introduce the credit card receipts signed by the appellant and maintained as business records by the issuing companies. While acknowledging that these receipts were probative of his fraudulent intent, *see United States v. Nichols*, 534 F.2d 202 (9th Cir. 1976), appellant argues that the prejudicial nature of this other crimes evidence was so great as to tip the balance of the scales in favor of the suppression of the receipts. The record discloses that the trial judge carefully balanced the probative force of the evidence against the prejudicial impact it might have upon the jury. In exercising

1. The trial court, in a slightly broader instruction, charged the jury that "[t]he term 'fraudulent intent' means a deliberate, planned purpose and intention to deceive and defraud in order to deprive another of his rights or in some manner to do him an injury."

2. We are not called upon to decide whether or not "returning" these cards for a "reward" after having used them fraudulently for so long as it appeared reasonably safe to do so, would have been an innocent use.

his broad discretion, he determined the issue in favor of admitting the evidence. We hold that he did not abuse his discretion. Rule 403, Fed.R.Evid.; *United States v. Bloom*, 538 F.2d 704 (5th Cir. 1976); *United States v. Urdiales*, 523 F.2d 1245 (5th Cir. 1975).

### (3) *Business Records and Sixth Amendment Confrontation Rights.*

In his final contention, appellant argues that the admission of the credit card receipts violated his rights of confrontation. Peden admits that the receipts were admissible under Rule 803(6) of the Federal Rules of Evidence, but that notwithstanding such admissibility his Sixth Amendment rights were infringed.

While we do wish to make it clear that evidence admissible under the Federal Rules of Evidence in a civil case may nevertheless run afoul of the Sixth Amendment, *see California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Dutton v. Evans*, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970),[3] this is not such a case. *United States v. Lipscomb*, 435 F.2d 795 (5th Cir. 1970); *McDaniel v. United States*, 343 F.2d 785 (5th Cir. 1965); *United States v. Marshall*, 532 F.2d 1279 (9th Cir. 1976).

Here the business records were of a purely factual nature; were shown to be trustworthy and reliable in accordance with the rationale of this exception to the hearsay rule; and a custodian was present at trial, giving the appellant the opportunity to cross-examine the custodian concerning the accuracy of the records. While we do not hold that all business records do not offend the right of confrontation, the situation here was such that the lack of oath and opportunity to cross-examine and observe the demeanor of the persons making the currency conversions from Mexican pesos to American dollars did not offend the confrontation rights of the appellant. *See Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972).[4]

Therefore, the judgment of the district court is

AFFIRMED.

---

3. "While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. . . . The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied." *California v. Green, supra* at 155–156, 90 S.Ct. at 1932; *Dutton v. Evans, supra* at 81–82, 91 S.Ct. at 216.

4. "The focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' *Dutton v. Evans, supra*, at 89, [91 S.Ct. at 220], and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement,' *California v. Green, supra*, at 161 [90 S.Ct. at 1936]." *Mancusi v. Stubbs, supra* at 213, 92 S.Ct. at 2313.