UNITED STATES of America,
Plaintiff-Appellee,

v.

Michael Jeffrey STOTTS, James Poole,
Jack Segura, and Wilfred Fabiano,
Defendants-Appellants.

No. 85–4681.

United States Court of Appeals,
Fifth Circuit.

June 26, 1986.
Rehearing Denied July 31, 1986.

Julie Ellen Cullen, (court-appointed), Opelousas, La., for Poole.

Ceceila Ann Bonin, (court-appointed), New Iberia, La., for Segura.

Patricia A. Thomas, (court-appointed), Abbeville, La., for Fabiano.

Jack T. Edmund, Bartow, Fla., for Stotts.

Joseph S. Cage, U.S. Atty., Dosite H. Perkins, Asst. U.S. Atty., Shreveport, La., for plaintiff-appellee.

Before WILLIAMS, JOLLY and HIGGINBOTHAM, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Michael Stotts, Jack Segura, James Poole, and Wilfred Fabiano were convicted on several counts of extortion in violation of 18 U.S.C. § 876, and an additional count of conspiracy to commit extortion in violation of 18 U.S.C. §§ 371, 2. Appellants claim that a number of motions for severance were improperly denied, a motion for mistrial was improperly denied, evidence was improperly admitted during the trial, and the jury was improperly instructed. Finding no merit in any of these claims, we affirm the convictions.

### Facts

In November 1983, the four appellants were inmates of the St. Martin Parish jail in St. Martinville, Louisiana. Stotts had been sent to this jail after being convicted of escaping from a federal facility. In December 1983, Stotts was transferred to another facility. The other appellants (the

codefendants) remained in the St. Martin jail.

Each of the jurors in Stotts' escape trial received a letter, all but one postmarked December 28, 1983 from Lafayette, Louisiana.[1] The letters read substantially as follows:

Hey [name]:

Just a brief line to let you know that you unjustly convicted—at a recent trial—one of our comrades—for which you will be justly reimbursed with a death sentence to be carried out by another of our members as soon as possible unless you send to the below address $1,000—in cash—promptly! There will be no second letter or warning—your life is your choice—chose [sic]!

P.S. Merry Christmas

If you notify the FBI the deal is off and you're dead!

P.O. Box 247

St. Martinville, Louisiana 70582

Needless to say, this was far from the most foolproof extortion scheme ever devised. Segura, Poole, and Fabiano signed all of the extortion letters. The return address on the letters was the St. Martin Parish jail. Because all incoming mail is inspected by jail authorities, it would of course have been impossible for the extortionists to collect $1,000 if anyone mailed it to them.

Although Stotts did not sign any of the extortion letters, the testimony indicated that he was the instigator of the crime. During the voir dire in Stotts' escape trial, the judge asked the jurors their names and addresses. Several jurors noticed Stotts writing down this information. Two inmates who served time with Stotts testified that Stotts bragged about his cleverness in devising the extortion plan. A cellmate of Stotts named Dillingham explained that, "[Stotts] said that he wrote approximately six or seven of the letters ... he was laughing and [he said] I conned these three idiots in the county jail and told them if

they wanted to get some federal time, to write these letters and threaten these jurors, but wait until after I had already gone and that way it would look like I didn't have anything to do with it." An inmate named Culp testified that Stotts boasted to him about the extortion plot and how Stotts could not be connected to it. Stotts apparently conceived this plan because he believed that his conviction for escape would be overturned on appeal, and, in his mind, juror intimidation would make his conviction on retrial less probable.

An indictment against the four appellants was returned in April 1985. Count I charged all appellants with conspiracy in violation of 18 U.S.C. §§ 371 and 2 to violate 18 U.S.C. § 876, the substantive extortion statute, in that they conspired to send threatening letters through the United States mail for the purpose of extorting money from former jurors. Counts II through VIII charged all appellants with various violations of 18 U.S.C. § 876 by engaging in the substantive crime of extortion through use of the mails. The four appellants were tried together.

Stotts twice moved for a severance before trial and severance was denied. He alleged that if he was tried jointly with the other three defendants, he would be deprived of his right to call them as witnesses. Stotts also contended that his defense was mutually antagonistic to the defense of his codefendants. At a pretrial hearing on the motion, the three codefendants refused to answer any questions, asserting their Fifth Amendment privileges. Fabiano also moved for severance prior to trial. He argued that he was charged with signing only three of the letters, and that Stotts was the "moving force and main actor." The district court denied this motion as well.

At a pretrial conference the prosecutor told defense counsel that the government had information that Stotts planned to dis-

---

1. One juror received a letter postmarked from Baton Rouge. Deputy Sheriff Douet testified that inmates are able to mail letters by smug-

gling them to post office boxes either during doctor visits or with the aid of inmate trusties.

rupt the trial and try to escape by using the three female defense counsel as hostages. In response, special security precautions were taken. A marshall was stationed at each of the courtroom exits. The defendants were required to sit at a table about six feet behind their counsel. Defense counsel and the government lawyers all sat at the same table while all the defendants sat together at the separate table.

During the third day of trial, Stotts became involved in an altercation with one of the marshalls. Stotts was removed from the courtroom, kicking and cursing. Once outside the courtroom, the disturbance continued within hearing of the jury. After Stotts had settled down, the judge reprimanded Stotts outside of the presence of the jury. The judge then instructed the jury to disregard Stotts' outburst.

The jury returned a guilty verdict on all counts against all of the appellants. The court sentenced Stotts to a total of fifteen years. Segura was given a ten year sentence, Fabiano, an eight year sentence, and Poole, a sentence of five years. The court ordered Stotts' sentence to run consecutively after the federal sentence he was serving, and the sentences of the others to run consecutively after the state sentences they were serving.

### Motions for Severance

Appellants contend the district court erred in denying the motions for severance of Stotts' trial from the trial of the other codefendants. Prior to trial, Stotts moved for severance alleging that he wanted to call the codefendants as witnesses in his trial. Fabiano moved for severance contending that Stotts was the "main actor" in the extortion plot. After the disturbance by Stotts in the courtroom, the codefend-

ants moved for severance from Stotts. Stotts and the codefendants also moved for severance on the ground that their defenses were mutually antagonistic. All motions were denied. All of the appellants assert that the district court erred in denying the various motions for severance.

■■ The general rule is that "[p]ersons indicted together should normally be tried together." *United States v. Romanello,* 726 F.2d 173, 177 (5th Cir.1984). F.R. Crim.P. 14 provides an exception to this general rule:

> If it appears that a defendant … is prejudiced by a joinder of … defendants … for trial together, the court may … grant a severance of defendants or provide whatever other relief justice requires.

The decision whether to sever lies within the sound discretion of the district court, and is reviewable only for an abuse of discretion. *United States of Berkowitz,* 662 F.2d 1127, 1132 (5th Cir.1981). "To establish an abuse of discretion, a defendant must show that he received an unfair trial and suffered compelling prejudice against which the trial court was unable to afford protection." *Romanello,* 726 F.2d at 177.

■■ We reject the claim that severance was improperly denied because the defenses of Stotts and the codefendants were mutually antagonistic. In order to compel severance on the theory that defenses are mutually antagonistic, the defense of one party, if believed, must *necessarily* indicate the guilt of the other party. *Id; see also Berkowitz,* 662 F.2d at 1133 (defenses must be "more than merely antagonistic—they must be antagonistic to the point of being mutually exclusive"). Even taking a charitable view of the defenses in this case,[2] each party merely ar-

---

2. A review of the record indicates that what in fact occurred was that the appellants put on very minimal defenses, basically providing no exculpatory information and merely arguing that the government had not adequately proved its case. The defenses *in toto* were as follows: Stotts presented one witness, his father. His father provided absolutely no testimony except to confirm that he was the father of Michael Stotts. Fabiano presented two witnesses who testified that he was either illiterate or wrote at a fourth or fifth grade level. Segura presented no witnesses and no defense at all. Poole presented one witness who testified that mail screening procedures at the jail would make receipt of the $1,000 impossible.

gued that he was not guilty because he was unaware of the plot. No defendant made any allegations that another defendant was guilty. In fact, such an allegation would be inconsistent with the defense that each party knew nothing about the scheme. It would be consistent with all of the defenses to find that none of the appellants were guilty, and that this plot was the dastardly idea of unidentified inmates who framed the appellants. The appellants were clearly not entitled to severance on the theory that their defenses were mutually antagonistic. *See United States v. Sheikh,* 654 F.2d 1057 (5th Cir.1981), *cert. denied,* 455 U.S. 991, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982) (holding on analogous facts that severance was not compelled).

■ Stotts' contention that he was deprived of his ability to call the other codefendants as his witnesses at trial is likewise without merit. Counsel for all parties stipulated that if called to testify all of the codefendants would refuse to testify by invoking their Fifth Amendment privileges. Fabiano's motion for severance on the ground that Stotts was the main actor in the conspiracy is equally meritless, because a party does not have a right to severance merely because a codefendant is more culpable then he. *United States v. Johnson,* 713 F.2d 633, 640 (11th Cir.1983), *cert. denied sub. nom., Wilkins v. United States,* 465 U.S. 1081, 104 S.Ct. 1447, 79 L.Ed.2d 766 (1984).

■ Finally, the motions for severance made by the codefendants after Stotts' outburst in the courtroom were properly denied. As we explain immediately below, by instructing the jury to disregard the incident the judge effectively removed any prejudice that might have been created. *See* text accompanying note 4, *infra.* We find no abuse of discretion by the district court in denying the motions for severance.

### Motion for Mistrial

■ The codefendants urge that the district court erred in denying a motion for mistrial made after Stotts had created the courtroom disturbance. We find no error here. First, the record discloses that no motion for mistrial was made by the codefendants.[3] Second, any possible prejudice to the codefendants was cured when the judge instructed the jury to disregard the incident following the outburst.[4] In the words of the brief filed for the codefendants in this appeal, the judge's instruction "was a masterpiece in its confection, eloquently phrased and delivered in a manner designed to assure the jury that the incident was of no moment." This instruction was sufficient to cure possible prejudice that may have existed. *United States v. Baete,* 414 F.2d 782, 783 (5th Cir.1969).

■ efendants additionally urge that a mistrial should have been granted because of the heightened security in the courtroom. The record, however, does not disclose that any of the appellants moved for mistrial on this ground, or even made a formal objection. Moreover, the record is devoid of any evidence of prejudice to the appellants because of increased security. The extra security precautions were necessary because Stotts had indicated that he intended to escape with defense counsel as hostages. In this instance, the added security did not create an unacceptable risk of prejudice to appellants and was totally proper under the circumstances. *See Holbrook v. Flynn,* —— U.S. ——, 106 S.Ct. 1340, 89 L.Ed.2d 525 (March 1986).

---

**3.** Only Stotts moved for a mistrial. His motion was denied for obvious reasons, and he does not urge error in denial of his motion for mistrial in this appeal.

**4.** The judge instructed the jury that:
You may have observed an the commencement of that brief recess an altercation which occurred in the courtroom. You are to take no notice of it. Make no mention of it. Being involved in a criminal trial is a very stressful thing ... So stress makes us all sometimes do things we shouldn't do. Please, there is to be in your minds no prejudice for or against any person, any party, any side of the lawsuit because of anything that you may have observed. Put it out of your mind. It is over and done with. Forget about it.

### Handwriting Expert

■ The codefendants contend that the district court erred in allowing a handwriting expert to testify about his comparison of writing samples made by the codefendants with the extortion letters. The codefendants assert that this testimony was inadmissible under F.R.E. 404(b)[5] because, they claim, the extortion letters were not specifically enumerated in the indictment.

This asserted ground of error is totally without merit. The F.B.I. handwriting expert compared handwriting samples of the codefendants with the extortion letters. The indictment specifically referred to all of the extortion letters and described them in detail. Count I of the indictment charged all of the appellants with conspiring to send all of the extortion letters. F.R.E. 404(b) has absolutely no applicability in this instance because all of the testimony directly concerned identifying the handwriting with the crimes for which appellants were indicted. There was no crime not alleged in the indictment which was testified to by the handwriting expert. *See United States v. Fleishman*, 684 F.2d 1329, 1336 (9th Cir.1982), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982) (handwriting expert testimony properly allowed).

### Jury Charge

■ Appellants contend that the district court erroneously instructed the jury because it did not charge them that the government must prove that the defendant actually wrote the threatening letter as an essential element of an 18 U.S.C. § 876 offense. Appellants cite *United States v. DeShazo*, 565 F.2d 893 (5th Cir.), *cert. denied*, 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1978), and several decisions from other circuits for that proposition.

We find that the district court did not err in refusing to instruct the jury that "writing" is an element of a § 876 offense. 18 U.S.C. § 876 provides, in pertinent part:

> Whoever, with intent to extort from any person any money or other thing of value, so deposits, or causes to be delivered, as aforesaid, any communication containing any threat to kidnap any person or any threat to injure the person of the addressee or of another, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

The statutory language nowhere requires that the accused must actually "write" the letter. Indeed, such a requirement would be inconsistent with the statutory language. The statute does not punish the writing of threatening letters; it punishes the mailing of them. The statute specifically punishes one who only "causes to be delivered" a threatening letter intending to commit extortion. We have recognized that this is a "relatively simple" statute, and that "writing" is not an element of the offense. *United States v. Guichard*, 779 F.2d 1139, 1144 & n. 7 (5th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 1654, 90 L.Ed.2d 197 (1986).[6]

Simple logic dictates that a requirement that the accused write the letter is not an element of a § 876 violation. If this element were required, then the application of this statute easily could be defeated. For example, if A wrote a threatening letter and B mailed the letter without A's consent, neither A nor B would have performed elements necessary to prove a violation of § 876. There would also be diffi-

---

**5.** F.R.E. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**6.** The pattern jury instruction for the Fifth Circuit recognizes that "writing" the letter is not an element of this cause of action. *Fifth Circuit Pattern Jury Instructions: Criminal Cases* 85 (1978) (instruction 14); *accord* Devitt & Blackmar, *Federal Jury Practice and Instructions* § 66.08 (Supp.1986).

cult questions involving liability where an accused, instead of writing the letter by hand, had cut out letters from magazines and pasted them together into an extortion note, or had purchased a prewritten extortion note from another. There is, of course, no indication that Congress intended to allow any of these modi operandi to defeat the application of the statute.

Appellants' reliance upon *DeShazo* and certain decisions of other circuits[7] is misplaced. Although those cases did refer to "writing" as an element of the offense, in all of them it was undisputed that the accused wrote the threatening letter. No case has been cited nor has any been found in which a defendant's conviction under § 876 was reversed because he did not actually write the threatening letter. Any language in those opinions indicating that the accused must "write" the letter is not faithful to the wording of the statute, and is incorrect. As we held in *Guichard*, 779 F.2d at 1144 n. 7, it is clear that 18 U.S.C. § 876 does not require as an element of the offense that the accused actually "write" the threatening letter.

### Conclusion

We reject all of the claims made by appellants, and we affirm their convictions.

AFFIRMED.

---

**7.** Other cases cited by appellants are: *Petschl v. United States,* 369 F.2d 769 (8th Cir.1966); *United States v. Reynolds,* 532 F.2d 1150 (7th Cir. 1976); *United States v. Sirhan,* 504 F.2d 818 (9th Cir.1974); and *United States v. Lincoln,* 589 F.2d 379 (8th Cir.1979). *Petschl* appears to have been the first case to have made the mistake of listing "writing" as an element of a § 876 offense. Later decisions inadvertently repeated this mistake by quoting from *Petschl* and its progeny when setting out a general description of a § 876 offense.