UNITED STATES of America, Appellee,

v.

Timothy M. BLOOM,
Defendant, Appellant.

No. 85–1963.

United States Court of Appeals,
First Circuit.

Heard Nov. 3, 1987.
Decided Nov. 25, 1987.

Philip C. Nessralla, Jr., Brockton, Mass., by Appointment of the Court, for defendant, appellant.

Richard G. Stearns, Asst. U.S. Atty., with whom Frank L. McNamara, Jr., Acting U.S. Atty., Boston, Mass., was on brief, for appellee.

Before CAMPBELL, Chief Judge,
BOWNES and BREYER, Circuit
Judges.

PER CURIAM.

Timothy Bloom appeals his conviction under 18 U.S.C. § 876 for mailing a threatening communication to United States District Judge Rya Zobel. Bloom argues that it was plain error for the district court not to have instructed the jury that authorship of the threatening communication was a necessary element of the offense, and for the prosecution to have failed to present evidence on that issue. Since the statute does not require proof of authorship, we reject Bloom's claim and affirm.

## I. BACKGROUND

In September of 1981, Bloom was tried and found guilty of bank robbery. Judge Zobel presided over the trial and, in November of 1981, sentenced Bloom to seven years' imprisonment. In December of the same year, Bloom pleaded guilty to a separate bank robbery charge and was sentenced by United States District Judge A. David Mazzone to a term concurrent with the sentence imposed by Judge Zobel. Thereafter, Bloom wrote to both Judge Zobel and Judge Mazzone requesting reduction in his sentences. Both judges denied the request.

Undaunted, Bloom wrote to Judge Zobel on four other occasions over the next two years regarding various aspects of his imprisonment. On February 15, 1982, Bloom requested assistance in obtaining a transfer to a different prison. On September 10, 1982, Bloom asked to be reclassified as an adult offender. In January of 1983, Bloom wrote requesting earlier parole eligibility and, in November of the same year, Bloom petitioned again for a prison transfer. After consulting with the Bureau of Prisons, Judge Zobel in 1982 made the necessary determination for Bloom to be reclassified as an adult offender. All other requests were denied as beyond the judge's authority.

A sixth and final letter—the one in question here—arrived on August 12, 1984. The envelope containing the letter was addressed to Judge Zobel and in the upper left hand corner bore the name of "Timothy Micheal Bloom" along with Bloom's prison identification number and a return address of the Metropolitan Correctional Center in New York City. The letter itself was two pages long. It began with a review of Bloom's dealings with Judges Zobel and Mazzone over the prior three and a half years. Bloom's seven-year sentence was mentioned, as well as the fact that Judge Zobel had denied relief sought by Bloom in his prior letters. The text of the letter then contained various threats to torture and kill Judges Zobel and Mazzone. At one point, the author of the letter said that, if he had the chance, he would act as "judge-jury-executioner" and pass death sentences on the two judges. Not a man to hide his feelings or his identity, the writer ended the letter with this:

> Until we meet again. Enjoy the remaining days of your life. Both of you for they are numbered.
>
> —In everlasting hatred—
> Timothy Micheal Bloom # 12877–038
> P.O. Box 1000—9 South
> 150 Park Row
> New York—New York 10007

At trial, a fingerprint expert from the Federal Bureau of Investigation testified that fifteen latent fingerprints were found on the envelope and the two pages of the letter. Of the five prints on the envelope, two exactly matched those on Bloom's fingerprint record. Eight prints were discovered on the first page of the letter, six of which were Bloom's, and two prints were found on the second page, both of which were Bloom's.

In its jury instructions, the trial court summarized section 876 in this way:

Whoever knowingly causes to be delivered by the Postal Service any communication containing any threat to injure the person of the addressee or to injure the person of another is guilty of an offense.

I'll say it again. It's a fairly simple statute. Whoever knowingly causes to be delivered by the Postal Service any communication containing any threat to injure another person is guilty of an offense.

The court then defined the elements of the offense:

In order to prove that Mr. Bloom is guilty as charged in this case, the government must prove two essential elements beyond a reasonable doubt.

It first must prove that Timothy M. Bloom knowingly caused the Postal Service to deliver a threatening communication. And second, it must prove that the threat was in the nature of a threat to kidnap or injure somebody.

The defendant did not object to these instructions. Indeed, in Bloom's own proposed instructions, the elements were described in this way:

In order to prove a violation of 18 U.S.C. § 876, the government must establish beyond a reasonable doubt the following elements of the offense:

First, that the defendant knowingly caused the Postal Service to deliver a communication that threatened another person.

Second, that the communication contained a threat.

Third, that the defendant made the threat knowingly and willfully.

The jury found Bloom guilty as charged. He was sentenced to four years' imprisonment, to be served after the sentences he is currently serving. This appeal followed.

## II. SECTION 876 AND THE "ELEMENT" OF AUTHORSHIP

18 U.S.C. § 876 provides, in relevant part:

Whoever knowingly [deposits in any post office or authorized depository for mail matter] or causes to be delivered [by the Postal Service], any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or another, shall be fined not more than $1000 or imprisoned not more than five years, or both.

The statute does not require that a person be the author of a threatening communication for criminal liability to attach. It requires only that the accused knowingly mail the letter and that the threat be a serious threat to kidnap or injure another person.

Nevertheless, as Bloom points out, a number of courts have, in the process of interpreting section 876, indicated that proof that a defendant actually wrote the threatening communication is an essential element of the crime proscribed. The authorship requirement appears to have originated in *Petschl v. United States*, 369 F.2d 769, 770 (8th Cir.1966), where it was said:

The essential elements of [section 876], each of which must be proved beyond a reasonable doubt, are: (1) that defendant wrote a letter ... containing a threat to injure ...; (2) that defendant knowingly caused the letter to be forwarded by the United States mail.

At some point, the Fifth, Seventh and Ninth Circuits have all followed or approved of the authorship requirement set down in *Petschl*. *United States v. Deshazo*, 565 F.2d 893, 894–95 (5th Cir.), *cert. denied*, 435 U.S. 953, 98 S.Ct. 1583, 55 L.Ed.2d 804 (1978); *United States v. Reynolds*, 532 F.2d 1150, 1155 (7th Cir.1976); *United States v. Sirhan*, 504 F.2d 818, 819 (9th Cir.1974); *see also United States v. Lincoln*, 589 F.2d 379, 381 (8th Cir.1979) (following *Petschl*). It is significant that the issue of authorship was not in dispute in *Petschl* or in any other of these cases.

Relying on the *Petschl* line of cases, Bloom urges that the district court's failure to instruct on the "element" of authorship is plain error warranting a new trial

even in the absence of an objection at trial. We find no error, plain or otherwise.

Although this court has never explicitly addressed the authorship requirement, we have previously stated that mailing, and *not* writing, is the gravamen of a section 876 violation. *Bender v. United States*, 387 F.2d 628, 630 (1st Cir.1967). We believe that this is still correct. Our reading of the statute is reinforced by the Fifth Circuit's recent decision in *United States v. Stotts*, 792 F.2d 1318, 1323–24 (5th Cir. 1986). Having previously cited approvingly to *Petschl*, the Fifth Circuit in *Stotts* was confronted for the first time with a case where authorship was actually in dispute. Like Bloom, the defendant in *Stotts* invoked the *Petschl* line of cases to challenge his conviction under section 876 because the trial court had not instructed on authorship. The Fifth Circuit rejected that argument, and relied on the plain language of the statute to hold that authorship was not a requirement. Noting that the issue was not contested in *Petschl* and its progeny, *Stotts* dismissed the *Petschl* authorship dicta as mistaken, and said that the mistake was repeated in later cases only because courts indiscriminately borrowed from *Petschl* when setting out a general description of a section 876 offense. 792 F.2d at 1324 n. 7.

The *Stotts* court pointed out that a requirement of authorship could complicate or defeat application of the statute and frustrate Congress' goal of criminalizing the communication of threats:

> Simple logic dictates that a requirement that the accused write the letter is not an element of a § 876 violation. If this element were required, then the application of this statute easily could be defeated. For example, if A wrote a threatening letter and B mailed the letter without A's consent, neither A nor B would have performed elements necessary to prove a violation of § 876. There would also be difficult questions involving liability where an accused, instead of writing the letter by hand, had cut out letters from magazines and pasted them together into an extortion note, or had purchased a prewritten extortion note from another.

> There is, of course, no indication that Congress intended to allow any of these modi operandi to defeat the application of the statute.

*Id.* at 1323–24.

We agree. The statute is clear and no purpose would be served by imposing additional judicially-created elements. The explicit requirement that a person "knowingly" mail the threat more than adequately guards against the possibility that persons might be convicted for innocently mailing threats written by third parties.

The district judge in this case properly instructed the jury that they must find beyond a reasonable doubt that Bloom knowingly mailed the letter to Judge Zobel and that the letter threatened injury. The evidence against Bloom was overwhelming. He has no cause to complain about his conviction.

*Affirmed.*