943 F.2d 53
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Samuel J. DAVIS, Jr., Defendant-Appellant.
 No. 89-5490.
 United States Court of Appeals, Sixth Circuit.
 Sept. 10, 1991.
 
 Before KEITH and ALAN E. NORRIS, Circuit Judges, and WEBER, District Judge.*
 PER CURIAM:
 
 
 1
 Samuel J. Davis ("Davis") appeals from the district court's April 10, 1989, judgment and conviction order for mailing threatening communications in violation of 18 U.S.C. § 876. For the reasons set forth below, we AFFIRM the conviction and sentence.
 
 I.
 
 2
 On April 13, 1988, three letters from Davis were received at the federal building in Memphis, Tennessee. One letter was addressed to Senior United States District Judge Robert M. McRae ("Judge McRae") and it read as follows:
 
 Saturday April 8, 1988
 Dear Judge McRae
 
 3
 Well I wish that you could be in my shoe, I have lose [sic] my family--I have lost all hopes of parole, I have lost everything there is for a man to have.
 
 
 4
 I want to kill you as dead as I am now you don't need to live enough [sic] day--
 
 
 5
 All these lies in my P.S.I. All those times you could have let me correct them and you did nothing.
 
 Samuel
 
 6
 One letter was addressed to United States District Judge Julia Gibbons ("Judge Gibbons") and it read as follows:
 
 Saturday April 8, 1988
 Judge Gibbon
 
 7
 I hope you are happy I have lost my family, my wife don't want me no more, I don't have no parole all because of these lies.
 
 
 8
 I want to kill you as dead as am I now dead.
 
 Samuel
 
 9
 The other letter was addressed to Federal Probation Officer Jerline Summerville ("Summerville") and it read as follows:
 
 Saturday April 8, 1988
 Mrs. Summerville
 
 10
 If you take my wife away from her kids I will make you as dead as I am now I sworn I will.
 
 Samuel JM Davis
 
 11
 Both Judges McRae and Gibbons had handled numerous civil and criminal cases involving Davis. Summerville had prepared a presentence report ("PSI") on Davis in connection with a prior conviction.
 
 
 12
 During the investigation of the letters, Davis was called before a federal grand jury to provide handwriting samples and fingerprints.[1] He refused to provide handwriting samples and fingerprints but agreed to answer questions regarding the letters. After he had been advised of his rights, Davis admitted that he wrote the letters and addressed the envelopes to Judge Gibbons, Judge McRae and Summerville. Davis also admitted that he stamped and mailed each letter.
 
 
 13
 On May 10, 1988, a federal grand jury returned a three-count indictment against Davis, charging him with mailing communications containing threats to injure Judge Gibbons, Judge McRae and Summerville. Counsel was appointed to represent Davis. Davis later filed a motion to represent himself. The district court held a hearing on the motion and permitted the defendant to continue pro se.
 
 
 14
 Davis' trial was held on January 17-19, 1989. At trial, Davis presented evidence that he reported to prison officials that he had taken a drug overdose of Dilantin on April 9, 1988. Thomas Laws ("Laws"), a physician's assistant, examined Davis and administered several tests. The test results indicated that Davis had a high level of Dilantin in his blood. However, Laws found that Davis was coherent and did not appear to be under the influence of any drugs.
 
 
 15
 Dr. Michael Washington testified that an overdose of Dilantin would show side-effects in one half hour to an hour. The primary side effect associated with a Dilantin overdose is cardiac difficulty. The results from Davis' EKG indicated no cardiac abnormalities.
 
 
 16
 On January 19, 1989, The jury found Davis guilty on each count. The district court entered its judgment and sentencing order on April 10, 1989. The trial judge sentenced Davis to a term of imprisonment of sixty months pursuant to the United States Sentencing Guidelines.
 
 
 17
 Davis filed a timely notice of appeal. This court subsequently appointed counsel to represent Davis. Davis, through his counsel and pro se, raises several issues on appeal which we address seriatim.
 
 II.
 
 18
 Davis first claims that the evidence was not sufficient to permit the case to be submitted to the jury. The record does not support Davis' contention. Thus we conclude that the district court did not err in denying Davis' motion for judgment of acquittal. See Fed.R.Crim.P. 29(a).
 
 
 19
 In addressing the sufficiency of the evidence, this Court does not sit as a trier of fact in a de novo trial. Rather the standard of review for claims of insufficiency of evidence is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 20
 Davis contends that the government did not prove a threat, therefore, the government did not prove that 18 U.S.C. § 876[2] had been violated. The district court properly charged the jury that there are two elements of the offense which the government must prove: (1) that Davis wrote letters containing a threat to injure the named persons; and (2) that Davis knowingly caused the letters to be delivered by the postal service to the addressees. See United States v. Bloom, 834 F.2d 16, 18 (1st Cir.1987). The district court also properly instructed the jury that the "term 'threat' means an avowed present determination or intent to injure presently or in the future." Joint Appendix at 129-30.
 
 
 21
 Davis seems to argue that the letters did not include a threat to injure because they were written from the perspective of a dead person who could not effectuate the threatened behavior. Davis' argument is not persuasive, however, because the "government does not have to establish that the defendant in a particular case had the actual capability to successfully accomplish the threatened action." United States v. Lincoln, 589 F.2d 379, 381 (8th Cir.1979). Davis presented his theory to the jury that the threats were not real, but the jury was not persuaded.
 
 
 22
 The plain language of the letters was sufficient to cause "a reasonable recipient, familiar with the context of the communication, [to] interpret it as a threat." Martin v. United States, 691 F.2d 1235, 1240 (8th Cir.1982), cert. denied, 459 U.S. 1211 (1983). Whether Davis actually was dead at the time the recipients read the letter or whether he expected to be dead at that time is irrelevant. The jury could reasonably have determined that the reader would reasonably perceive a threat. For example, the writer could have placed a dangerous force in motion directed at the addressees before his contemplated death. When viewing the evidence in the light most favorable to the government, we conclude that the essential elements of the crime could have been found beyond a reasonable doubt by a rational trier of fact. Thus the district court's denial of the motion for acquittal was proper.
 
 
 23
 Davis next argues that he was denied the right to confront witnesses--Judge McRae, Judge Gibbons, and Summerville--in violation of the sixth amendment. This contention is also meritless. Davis was aware of his right to subpoena Judge McRae, Judge Gibbons and Summerville as witnesses. However, he did not move to subpoena them. It was not incumbent upon the government to call them to testify regarding their subjective fear in order to prove Davis' guilt.
 
 
 24
 Davis also argues that the government withheld from him exculpatory evidence consisting of reports relating to his suicide attempt. Our review of the record reveals no support for Davis' allegations.
 
 
 25
 "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). Evidence withheld from the defense is "material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667, 682 (1985). Davis has not shown that any evidence allegedly withheld from him was exculpatory or that, if disclosed, it would have affected the outcome of the proceeding.
 
 
 26
 Davis received copies of his prison logs and his medical records. Davis' medical file was available at trial for his use. Davis called Officer Owens as a witness. Davis has failed to establish that the government had Officer Owens' memorandum. When the district court requested the memorandum, a copy of it was obtained from the prison files and submitted to the district court. Upon review, the district court found that the contents of the memorandum were consistent with Officer Owens' testimony. Based on this record, Davis has failed to establish that the government failed to provide him exculpatory evidence that was material to his defense.
 
 
 27
 Davis also claims that the district court did not rule on several of his motions. The motions at issue are those requesting appointment of an investigator, the services of an expert and appointment of standby counsel. Again, the record does not support Davis' contentions.
 
 
 28
 In its February 15, 1989, order, the district court denied the motion to employ a medical expert on the grounds that Davis was attempting to relitigate matters already resolved during the course of his trial.
 
 
 29
 The motion for appointment of standby counsel was filed by appointed counsel when he moved to withdraw from the case. Davis, however, refused the court's attempts to appoint counsel to represent him. Thus we find no basis for Davis' claim that the district court failed to rule upon the motion to appoint standby counsel.
 
 
 30
 Davis moved the district court for appointment of an investigator pursuant to 18 U.S.C. § 3006A(e). Davis, however, did not provide information to the court to enable it to find that the services were necessary. The decision to grant or deny a request for services under § 3006A(e) is committed to the district court's sound discretion. United States v. Goodwin, 770 F.2d 631, 635 (7th Cir.1985), cert. denied, 474 U.S. 1084 (1986). The district court's denial of the motion for appointment of an investigator was not an abuse of discretion since Davis did not provide an explanation of why the services were necessary. See id. (upholding the denial of a request for an investigator where an explanation of why the services were needed was not provided).
 
 
 31
 Davis also complains that the admission of certain documents under the business records exception to the hearsay rule, Fed.R.Evid. 803(6), violated his rights guaranteed by the confrontation clause of the sixth amendment. At trial, Deputy United States District Court Clerk Barry Cleaves introduced documents relating to Davis' civil and criminal cases which were part of the files in the clerk's office.
 
 
 32
 The records were properly admitted as records kept in the ordinary course of business. In pertinent part, Rule 803(6) defines the following as records not excluded as hearsay:
 
 
 33
 (6) Records of regularly conducted activity.
 
 
 34
 A memorandum, report, record, or data compilation, in any form, of acts events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness.
 
 
 35
 Fed.R.Evid. 803(6). The documents admitted into evidence satisfied the requirements of Rule 803(6). In addition, Cleaves served as the authenticating witness as required by the rule. Evidence admissible under the Federal Rules of Evidence may sometimes run afoul of the sixth amendment. See United States v. Peden, 556 F.2d 278, 281 (5th Cir.), cert. denied, 434 U.S. 871 (1977). However, the instant case does not present such a circumstance. The business records were factual; they were shown to be trustworthy in accordance with the rationale of the business records exception to the hearsay rule; and a custodian was present at trial, thereby providing Davis with the opportunity to engage in cross-examination concerning the accuracy of the records. That the individuals making the notations in the civil and criminal docket sheets were not under oath and present for cross-examination did not offend Davis' confrontation rights. See Mancusi v. Stubbs, 408 U.S. 204, 213 (1972). Thus we conclude that Davis' assignment of error is without merit.
 
 
 36
 Next, Davis contends that it was error for the district court to admit evidence of his prior criminal convictions. Our review of the record indicates that the district court admitted the evidence of Davis' prior criminal convictions in accordance with Fed.R.Evid. 404(b).[3]
 
 
 37
 The district court admitted only those criminal convictions in which Davis was sentenced by either Judge Gibbons or Judge McRae. Summerville had prepared the presentence reports in those cases. The records at issue were introduced to show that it was not merely a coincidence that the threatening letters were mailed to the judges and Summerville. Thus, we conclude that the district court properly admitted records of Davis' prior convictions to show evidence of his motive to send threatening letters.
 
 
 38
 Finally, Davis argues that the district court erred in applying the United States Sentencing Guidelines (the "Guidelines"). The presentence report showed an offense level of 18 and a criminal category of VI. According to the Guidelines, the applicable range was 57 to 71 months. The district court sentenced Davis to a term of incarceration of sixty months. We find no evidence that the district court abused its discretion in setting the sentence.
 
 
 39
 Section 2A6.1 provides a base level of 12 for the offense of mailing threatening communications. Davis argues that he is entitled to a four-level reduction pursuant to § 2A6.1(b)(2) because his conduct involved a single act evidencing little or no deliberation. Davis mailed three letters, one to each of the three federal officials. These acts do not constitute a single instance. Thus he was not entitled to a four-level reduction under § 2A6.1(b)(2).
 
 
 40
 Davis also claims that the three counts of mailing the threatening letters should have been grouped together as closely related counts pursuant to § 3D1.2. The procedure for determining the offense level on multiple counts is governed by § 3D1.1 of the Guidelines. This section provides the following:
 
 
 41
 Procedure for Determining Offense Level on Multiple Counts
 
 
 42
 (a) Group the counts resulting in conviction into distinct Groups of Closely-Related Counts ("Groups") by applying the rules specified in § 3D1.2.
 
 
 43
 (b) Determine the offense level applicable to each Group by applying the rules specified in § 3D1.3.
 
 
 44
 (c) Determine the combined offense level applicable to all Groups taken together by applying the rules specified in § 3D1.4.
 
 
 45
 Grouping of closely related counts is governed by § 3D1.2, which provides in pertinent part:
 
 
 46
 All counts involving substantially the same harm shall be grouped together into a single Group. A count for which the statute mandates imposition of a consecutive sentence is excluded from such Groups for purposes of §§ 3D1.2-3D1.5. Counts involve substantially the same harm within the meaning of this rule:
 
 
 47
 (a) When counts involve the same victim and the same act or transaction.
 
 
 48
 (b) When counts involve the same victim and two or more acts or transactions connected by a common criminal objective or constituting part of a common scheme or plan,....
 
 
 49
 U.S.S.G. § 3D1.2 (emphasis added). Applying the relevant provisions of the Guidelines to these facts, we find no basis for Davis' claim that the three counts should be grouped. Mailing each letter constitutes a separate act; and Davis mailed each letter to a different victim. Thus this argument must fail.
 
 
 50
 Davis also maintains that he should be given credit for acceptance of responsibility pursuant to § 3E1.1. Under this provision, the defendant is entitled to a two-level reduction "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." U.S.S.G. § 3E1.1(a). Davis' probation officer did not recommend the reduction and the district court agreed that the reduction was unwarranted. We note that Application Note Five of the relevant provision states that the "sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility." Accordingly, we should accord the sentencing judge great deference when reviewing his or her determination on this issue. U.S.S.G. § 3E1.1, comment. (n. 5).
 
 
 51
 The record indicates that Davis continued to deny that he threatened anyone. As the district court's determination that Davis was not entitled to a two-level reduction for acceptance of responsibility was well-founded, we affirm the sentence imposed.
 
 III.
 
 52
 For the foregoing reasons, we AFFIRM the judgment and sentence entered by the Honorable Odell Horton, Chief United States District Judge for the Western District of Tennessee.
 
 
 
 *
 The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Davis was represented by counsel at the time
 
 
 [2]
 The statute provides the following:
 Whoever knowingly so deposits or causes to be delivered as aforesaid, any communication with or without a name or designated mark subscribed thereto, addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another [shall be guilty of an offense against the United States].
 18 U.S.C. § 876.
 
 
 [3]
 Rule 404(b) of the Federal Rules of Evidence provides the following:
 Other crimes, wrongs, or acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. (emphasis added).