UNITED STATES COURT OF APPEALS
For the Fifth Circuit

_____

No. 94-30196
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

FERNELL WILWRIGHT, ERSKIN DUSKIN and MICHAEL TURNER,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Eastern District of Louisiana
_____

(June 15, 1995)

Before LAY,[1] DUHÉ and DeMOSS, Circuit Judges.

LAY, Circuit Judge:

Fernell Wilwright, Erskin Duskin, and Michael Turner appeal their judgments of conviction for conspiracy to distribute more than fifty grams cocaine base (crack) under 21 U.S.C. §§ 841(a)(1) and 846. Wilwright was sentenced to 102 months imprisonment, Duskin to 140 months, and Turner to 135 months. The defendants raise separate arguments on appeal. Finding no prejudicial errors occurred during the trial, we affirm.

FACTS

The primary evidence at trial related to multiple sales of crack cocaine by Michael Turner to an undercover officer, Blaine

_____

[1]Honorable Donald P. Lay, Senior Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Hebert, in Kenner, Louisiana. These sales occurred from November 1992 through January 1993. Many of Hebert's conversations with Turner were recorded and admitted into evidence.

Erskin Duskin and Fernell Wilwright were primarily connected to Turner's drug sales through a sale to Hebert on November 18, 1992. That evening, Turner met Hebert in a parking lot at 7:15 p.m. Turner explained he did not have the crack with him and he was going to meet someone to get it. At Turner's direction, Hebert drove through the lot to where a white Buick Skylark was parked. According to government witnesses, both Wilwright and Duskin then approached Hebert's car. Turner told Hebert that Wilwright and Duskin were his "hook" and "guide." Testimony revealed these terms meant that one man was a "go between" and the other man had "the dope." Hebert paid Turner $1,200 and Turner then got into the Skylark where both Wilwright and Duskin were sitting. In a few minutes Turner returned and gave Hebert four large rocks of crack. On Hebert's scale, the rocks weighed about an ounce altogether. Hebert and Turner drove back to where Turner's car was parked. Hebert saw Duskin standing by the car and also saw Turner and Duskin leave together in Turner's car. Other officers testified to seeing these events and also identified Duskin and Wilwright as Turner's associates on that occasion.

Testimony revealed other purchases of crack by Hebert from Turner on November 4, 1992, and January 14, 1993. One officer testified that Erskin Duskin's cellular phone was called from the number 467-3189 some sixty-two times from November 1992 to January

1993.  This was the number Turner had given Officer Hebert to call.
In addition, a phone belonging to Wilwright's girlfriend received
calls from Duskin's cellular phone, Duskin's mother's phone, and
Turner's phone.

<u>Fernell Wilwright</u>

On appeal, Wilwright contends the only evidence associating
him with Turner was his mere presence at the scene where Hebert
purchased crack from Turner on November 18th.  This claim overlooks
Turner's designation of Duskin and Wilwright as being his "hook"
and "guide."  It also disregards the strong inference of
conspiratorial conduct flowing from the fact that before Turner
gave Hebert the crack on November 18th, he met with Duskin and
Wilwright in the Buick Skylark.  We find sufficient evidence to
convict Wilwright as a member of the conspiracy.

Wilwright also complains of the court's admission of evidence
that he was involved in a prior crack sale during the period in
which the conspiracy was alleged to exist.  Wilwright contends the
evidence should not have been admissible under Fed. R. Evid. 404(b)
because its prejudicial effects substantially outweighed its
probative value under Fed. R. Evid. 403.  We find the evidence was
relevant to establishing Wilwright intended to sell crack with
Turner and Duskin.  It is settled in this Circuit that Rule 404(b)
permits the admission of other crime evidence when a defendant
places his intent at issue in a drug conspiracy case by pleading
not guilty.  <u>United States v. Gadison</u>, 8 F.3d 186, 191-92 (5th Cir.
1993); <u>United States v. Prati</u>, 861 F.2d 82, 86 (5th Cir. 1988);

<u>United States v. Moye</u>, 951 F.2d 59, 61-62 (5th Cir. 1992).  This is especially true when the defendant contends he was merely present at the scene of the crime.  <u>See</u> <u>United States v. Martino</u>, 759 F.2d 998, 1004-05 (2d Cir. 1985).  The extrinsic evidence however, although admissible under Rule 404(b), is still subject to Rule 403.  <u>See</u> <u>United States v. Beechum</u>, 582 F.2d 898, 910-11 (5th Cir. 1978) (en banc) (explaining that Fed. R. Evid. 404(b) requires first, a determination that the extrinsic offense evidence is relevant to an issue other than character, and second, that the evidence pass the requirements of rule 403), <u>cert.</u> <u>denied</u>, 440 U.S. 920 (1979).  We do not find the probative value of this evidence was substantially outweighed by it prejudicial effect.  The trial court could properly admit the evidence.

<u>Michael Turner</u>

Turner contends he received ineffective assistance of counsel. Although he did not object at trial, Turner now argues the ineffective assistance of counsel he received amounts to plain error under Fed. R. Crim. P. 52(b).

Turner first contends counsel should have requested a hearing to explore more fully a conflict of interest involving attorney Arthur Harris.  <u>See</u> <u>United States v. Garcia</u>, 517 F.2d 272, 277 (5th Cir. 1975) (stressing the need for judicial involvement in a defendant's decision to waive his right to conflict-free representation).  Harris represented Erskin Duskin at trial, but also represented Turner in a pending criminal case in state court.

For this reason, the government sought to disqualify Harris

from representing Duskin.  The trial court denied the motion because both Duskin and Turner told the court they did not object to the representation, and because Harris stated that he did not discuss Turner's case with Duskin, or Duskin's case with Turner. Turner now argues his counsel was ineffective in failing to request a more in-depth hearing for Harris's disqualification.  Turner claims he was prejudiced by the dual representation when Harris asked an officer whether he was aware Mr. Turner had said that Erskin Duskin was not with him on November 18.  Turner contends the question presumed his presence at the drug sale, indicates Harris used information obtained from Turner against him, and undermined his right to remain silent.

From our review of the record, we do not believe a Garcia hearing was necessary in these circumstances.  First, the court did thoroughly inquire about the conflict and question both Turner and Duskin as to whether they had any concerns.[2]  The Garcia court

---

[2]The record indicates the following exchange, with counsel present, between the court and defendants Turner and Duskin:

THE COURT:  Let me ask again, Mr. Turner, do you have any objection whatsoever to Mr. Harris going forward in this matter?

THE DEFENDANT, MR. TURNER:  No, sir.

THE COURT:  In your behalf and at least in one instance, in behalf of Mr. Duskin?

THE DEFENDANT, MR. TURNER:  No, sir.

THE COURT:  How about you, Mr. Duskin?

THE DEFENDANT, MR. DUSKIN:  No, sir.

THE COURT:  Is it fair to say that your preference, addressing

acknowledged that defendants can knowingly and intelligently waive any disqualification of their attorney. Id. at 276. Second, the information on which Harris's question was based could equally have come from the Duskin witnesses previously discussed. Third, the question was never answered and the witnesses were twice instructed that the only evidence in the case would come from the witnesses, not the attorneys.

Turner's second complaint of ineffective assistance is that although counsel had located two women who were willing to impeach a confidential informant who introduced Turner to Hebert,[3] they

_____

> this to both Mr. Duskin and Turner, would it be fair to say your preference would be to continue with the relationship that exists where each of you, in different cases is represented by Mr. Harris?

THE DEFENDANT, MR. DUSKIN:  I have no problems with that.

THE DEFENDANT, MR. TURNER:  The same thing, no problem.

* * *

THE COURT:  Let me put the question directly to Duskin and Turner.  You all have heard this collogue [sic], this discussion between the U.S. Attorney and myself.  Do you have any reservations at all whether it be because of the expense or because of any of the things that we discussed up to now, do either of you have any reservations at all or any concern at all or any fear at all or any unsatisfactory feelings at all with respect to Mr. Harris continuing in his capacity as it has to do with each of you?

THE DEFENDANT, MR. DUSKIN:  No, your Honor.  I am fine with the attorney I have.

THE DEFENDANT, MR. TURNER:  I am happy with the way the thing is going.

[3]Counsel for Turner told the court he planned to present two witnesses who would testify the confidential informant who had told Hebert about Turner lived in the building where one of the

-6-

were not available to testify. Turner indicates the witnesses may have left as a result of their misunderstanding of the trial court's sequestration of the witnesses.[4] The court refused counsel's request for time to locate the witnesses. The record does not indicate counsel subpoenaed the two women to ensure their presence at trial. Accordingly, Turner argues his counsel infringed on his right to compulsory process. See Taylor v. Illinois, 484 U.S. 400, 409 (1988).

We find no merit to this complaint.[5] The witnesses did make an appearance at trial. Counsel committed no error when they failed to remain nearby after having been ordered from the courtroom. Counsel might well have decided as a tactical matter not to request subpoenas for witnesses who would give favorable testimony. Moreover, the informant did not testify and was only

telephones mentioned in testimony was located. The witnesses would state the informant frequently received and made calls from that phone. They would further testify the informant had a drug problem and a vendetta against Turner.

[4]Earlier that day, the court had announced, in response to an objection by the prosecutor to the presence of witnesses in the courtroom in violation of the court's sequestration order, that witnesses present during testimony would not be allowed to testify. Although the court later withdrew from that position and indicated the issue of sequestration would be dealt with as it came up, both Turner and Duskin, see infra, believe their witnesses may have left the courthouse in the belief they would not be allowed to testify.

[5]The government contends we should not address Turner's ineffective assistance claims because they were not brought up to the trial court. While this is generally the rule, the record before us is sufficient to evaluate Turner's claims. See United States v. Bounds, 943 F.2d 541, 544 (5th Cir. 1991), cert. denied, 114 S. Ct. 135 (1993); United States v. Kinsey, 917 F.2d 181, 182 (5th Cir. 1990).

mentioned as the person who introduced Hebert to Turner. Most importantly, we do not find any prejudice because it is apparent the testimony of the witnesses would have had no effect on the trial.[6]

Erskin Duskin

Duskin claims the court erred in denying his motion for severance and his motion for a continuance. Duskin sought to sever his trial from Turner's on the ground that Turner would testify that he (Duskin) had nothing to do with the crack sales. At a pre-trial hearing, the court heard one witness state that Turner had told her he was willing to testify to Duskin's non-involvement. Two other witnesses were also available to testify that Turner made similar statements to them. However, when the hearing continued the following day, Turner's counsel told the court Turner was not willing to testify.

Generally, "[p]ersons indicted together should ordinarily be tried together." United States v. Romanello, 726 F.2d 173, 177 (5th Cir. 1984); see United States v. Stotts, 792 F.2d 1318, 1321

---

[6]In a footnote in his brief, Turner alleges another instance of ineffective assistance. He contends his counsel failed to object to the presentence report's addition of three points as a result of his criminal history. One point was added for Turner's plea of guilty on February 4, 1991 to the reduced charge of possession of cocaine. Turner was sentenced to two years inactive probation. Two points were added because Turner's instant conspiracy conviction occurred during his two year inactive probation term. Turner wrote the court claiming the presentence report was inaccurate because he was not on probation at the time the instant offense occurred. We find the presentence investigation states explicitly that Turner was on inactive probation at the time of the offense and counsel therefore committed no error.

(5th Cir. 1986).  Fed. R. Crim. P. 14 provides that severance may be granted if a defendant will be prejudiced by a joint trial. Given Turner's unwillingness to testify, the court did not abuse its discretion in denying Duskin's motion for severance.  See Stotts, 792 F.2d at 1322.

When given the opportunity to present a defense, counsel for Duskin informed the court he had listed several witnesses and made subpoena requests for them, but they were not present.  Counsel requested a recess until the next day so that he could try to locate the witnesses.  The court refused the request and announced the trial would continue until 4:50 p.m.  Counsel then requested a five-minute recess to determine whether his witnesses had been located.  The court announced a recess until 4:15.

When the trial reconvened, counsel for Duskin rested, subject to a proffer he made later, in the absence of the jury.  In his proffer, counsel stated he had seven alibi witnesses who would testify that on the evening of November 18th Duskin was at Charlie Nickerson's residence, and from there went with others to see an 8:00 p.m. showing of "Malcolm X."  The government proffered that its rebuttal to this testimony was that the theater was close to where the drug transaction occurred and the only showings of the film were at 7:30 p.m. and at 8:00 p.m., making it possible for Duskin to have participated in the drug transaction at approximately 7:15 p.m. because the transaction lasted only a few minutes.

Duskin argues the court did not have a good reason to refuse

his counsel's request for a continuance to give him time to locate his witnesses. The witnesses had previously been in court and had heard the court say they would not be allowed to testify. Naturally, they left. Further, excusing the jury at 4:15 instead of 4:50 would not have been a hardship for them because the jury still had to return the next day for closing arguments and instructions. Duskin argues he was prejudiced by this deprivation of his Sixth Amendment right to have witnesses testify on his behalf, citing Taylor v. Illinois, 484 U.S. 400, 408-09 (1988).

We believe the trial court should have granted a continuance to Duskin's counsel until the following morning. The court's sequestration statement that no witness present during testimony would be permitted to testify, despite the court's later qualification, may very well have been a factor in causing the witnesses to leave the courthouse. Neither the jury nor the government would have suffered any significant consequences as a result of a continuance.

Despite this, we have held that a court's decision to deny "a continuance does not constitute an abuse of discretion unless the movant shows that he was seriously prejudiced by the denial." United States v. Khan, 728 F.2d 676, 681 (5th Cir. 1984). Duskin has failed to establish prejudice. Hebert and another officer who observed the drug sale testified they knew Duskin very well and saw him clearly that evening. Another officer who observed Duskin and Turner driving away from the scene also saw Duskin clearly and knew him well, having attended high school and played on the football

team with him. Cross examination did not challenge these identifications. As for Duskin's alibi, the transaction took only a few minutes and he could easily have been at the scene and then made the 8:00 o'clock show. Without more specific proof of what the alibi witnesses would say, we hold there was no prejudice in the denial of the continuance.

Duskin, Turner, and Wilwright all adopt each other's arguments by reference. We find none of the appellants' arguments have merit.

We AFFIRM the judgments of conviction.