**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Dorothy A. JOHNSON, Defendant–Appellant.**

**No. 91–1857.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1991.

Decided June 12, 1992.

John W. Vaudreuil, Asst. U.S. Atty. (argued), Daniel P. Bach, Asst. U.S. Atty., Madison, Wis., for plaintiff-appellee.

Daniel W. Hildebrand (argued), Ross & Stevens, Madison, Wis., for defendant-appellant.

Before POSNER, COFFEY and FLAUM, Circuit Judges.*

COFFEY, Circuit Judge.

Dorothy A. Johnson was convicted by a jury of attempting to extort money by sending a threatening letter through the U.S. mails in violation of 18 U.S.C. § 876. Johnson appeals her conviction and sentence. We affirm.

I.

On October 5, 1990, Harriet Nyquist, a 64–year–old widow living alone in Bruce, Wisconsin, received an envelope in the mail addressed to her residence. The envelope had a Ladysmith, Wisconsin postmark and no return address. Inside the envelope

---

* This opinion overrules *United States v. Reynolds,* 532 F.2d 1150 (7th Cir.1976), and has been circulated among all judges of this court in regular active service pursuant to Circuit Rule 40(f). No member of the court requested a rehearing *en banc.*

was a two-page hand-written letter instructing Nyquist to place $25,000, in 100, 50, and 20 dollar bills in a small cardboard box near the fence or the dumpster behind the Go–Mart gas station in Ladysmith, Wisconsin. According to the letter, Nyquist was to deliver the money on Saturday, October 6, 1990, at 3:30 p.m., and return home immediately. The letter threatened that if Nyquist reported the extortion attempt to anyone, or failed to deliver the money at the appointed time, her "nice house [would] go up in smoke" or be "blown up" and that she could "forget about ... [her] life." "You will do this or else, something else will happen," the letter warned. "I'm sure you like your home, or you like to live. I have eyes everywhere."

Nyquist immediately contacted her son in Florida, and shortly thereafter the F.B.I. and the Rusk County, Wisconsin sheriff's department came into the case. With Nyquist's help, the law enforcement officials set a trap for the would-be extortionists. On Saturday, October 6, Nyquist drove her white Mercedes 500–SEL to her bank in Bruce where waiting law enforcement officials gave her a dummy extortion drop package. At about 3 p.m., Nyquist left the bank and drove to Ladysmith. Following police instructions, she passed the Go–Mart gas station, drove around behind it and then entered an alley alongside it. Nyquist dropped off the dummy extortion package under the dumpster, and returned home.

All this was done under the watchful eyes of a number of law enforcement officials, including Gary Hahn, an investigator in the Rusk County sheriff's department, and John Schulte, an F.B.I. agent. Hahn and Schulte had stationed themselves in a bike shop across the street from the Go–Mart at approximately 12:30 p.m. on the afternoon of October 6, 1990. The two testified that they had an unobstructed view of the targeted dumpster behind the Go–Mart. Traffic on the street was "fairly light", perhaps ten or fifteen cars passing every half hour, according to Hahn. At about 1:55 p.m., Hahn and Schulte observed an olive green Plymouth drive slowly past their position. The driver's side of the car was nearest to the officers. As the

car passed the dumpster, Schulte testified that it "slowed down noticeably. And I could see both the driver and the second occupant turn to the right and look directly at the dumpster." A license plate check of the car revealed that it was registered to a man named Beverly Collins. The car stopped for a few minutes in the parking area in front of the Go–Mart, and then drove off.

At approximately 2:23 p.m., the green Plymouth reappeared, again slowly driving past the Go–Mart. On this pass, *both* Hahn and Schulte observed the occupants of the car "looking in the direction of the dumpster behind the Go–Mart" as they drove by. Moments later, the car returned a third time, this time parking in an IGA grocery store lot across the street from the Go–Mart. The car was parked facing directly towards the dumpster "about as far away as it could possibly park from" the IGA grocery store door, although parking spots closer to the IGA door were available at this time. Hahn recognized the driver of the car as Beverly Collins, with whom he had had past contacts.

After about ten or fifteen minutes, Collins' companion, who would later be identified as the defendant Dorothy A. Johnson, left the car and walked towards the grocery store. Collins exited the Plymouth, examined one of its tires, looked under the hood of the car, and re-entered the car. A few moments later, Johnson returned to the car, carrying a grocery bag, and sat in the passenger's seat. Hahn testified that he saw coffee mugs on the car's dash and that "[t]here was again a lot of looking in the direction of the Go–Mart store." Johnson then went back towards the grocery store. Collins went towards the Go–Mart store and returned to the car a few moments later. Collins then got out of the car once more, put on a red plaid jacket and walked towards the grocery store.

At about this time, Nyquist drove by the Go–Mart in her white Mercedes. Johnson and Collins had a brief conversation outside the grocery store and at this time the defendant walked towards the store and Collins walked towards the car. Hahn noticed

Collins become "suddenly a bit more alert or nervous" when the Mercedes drove by, but did not notice any reaction from Johnson. As instructed, Nyquist left the dummy extortion box in the dumpster area. A few moments later, Collins walked across the street and picked up the extortion box. The officers converged on Collins and arrested him while in possession of the dummy box. They arrested Johnson five minutes later as she emerged from the IGA. She was carrying a grocery bag containing some diet pop and chicken.

Later that day, Johnson was interviewed by the law enforcement team and denied any knowledge of the package Collins picked up in the Go–Mart alley. According to Johnson's account of her activities, she passed the Go–Mart only once that day. She also stated that she had not been in the Ladysmith post office in over a week.

Johnson and Collins were both indicted for violation of 18 U.S.C. § 876; Johnson pled not guilty and Collins pled guilty. At trial, Johnson and the government stipulated that Collins wrote the letter Nyquist received and that his fingerprints were on the letter and the envelope, while Johnson's fingerprints were found neither on the envelope nor the letter. On February 11, 1991, after a one-day trial, the jury returned a guilty verdict against Johnson, rejecting her contention that she was not an equal participant in the crime with Collins.

Johnson moved pursuant to Fed. R.Crim.P. 29(c) for a judgment of acquittal notwithstanding the verdict, claiming that the evidence presented at trial was insufficient to support her conviction. In the alternative, Johnson moved pursuant to Fed.R.Crim.P. 33 for a new trial in the interest of justice because, she argued, the great weight of the evidence did not demonstrate her guilt and because she was denied her right to effectively cross-examine a government witness. The district court denied both motions in an amended order dated March 27, 1991. On April 9, 1991, the district court sentenced Johnson to 42 months imprisonment to be followed by a three-year term of supervised release.

## II.

The crux of Johnson's appeal of her conviction is her claim that the district court erroneously limited her right to cross-examine a government witness, Donovan C. Raasch. At the time of trial, Raasch was a 65–year old clerk with 28 years of service at the Ladysmith post office. Raasch, who had known the defendant Johnson for some 20 years, testified that on October 3rd or 4th, 1990, Johnson arrived at the post office accompanied by a man, whom he later identified as Beverly Collins. On direct examination, Raasch gave the following account of Johnson's and Collins' activities at the post office on the date of their visit. Johnson and Collins came to Raasch's window and, after Johnson requested an envelope, "[t]hey [Johnson and Collins] purchased" it. Raasch asked Johnson if she wanted a small or large envelope and she, after a moment of hesitation, answered "large." Raasch recalled giving Johnson "one of our new holographic envelopes. We had not had them in very long so they were new to me and to the public." Raasch stated that, "Mrs. Johnson turned [the envelope] over and looked at it. When you turn the envelope it reflects light in different ways." Johnson and Collins then went over to a work table. A few moments later the two returned to Raasch's window and Collins asked for change. Raasch said the pair walked over to the copy machine, and then back to a work table. (An FBI expert testified at trial that the letter Nyquist received was photocopied using the Ladysmith post office copy machine.) The two then returned to Raasch's window, and Collins asked for a stamp. Raasch told "them" that that envelope required no more postage. Collins asked Raasch if the letter would arrive in Bruce the next day, and the postal clerk responded "probably."

On cross examination, defense counsel questioned Raasch about an interview he had on October 10, 1990, with John R. Ducommun, an investigator with the Rusk County sheriff's department. Ducommun prepared the following summary of

Raasch's statement, which was marked as Defendant's Exhibit 105:

"... Raasch advised that he is a postal employee and was working the front window at the [Ladysmith] Post office during the previous week. Ducommun advised Raasch of the extortion attempt. Raasch advised that he had heard over the radio news about the extortion. Ducommun questioned Raasch about the envelope sold by the post office. Raasch advised that the envelopes are unique using a hologram stamp. Ducommun showed a photograph of Collins and Johnson to Raasch and asked Raasch if he had ever sold either of the subjects an envelope the previous week. Raasch advised that he sold to Collins a hologram stamped envelope on either Wednesday, October 3, or Thursday, October 4, 1990. Raasch recalled Collins making a statement about the stamp calling the stamp 'funny looking'. Raasch advised that he personally knows Dorothy Johnson and she was in the company of Collins. Raasch advised the he recalled Johnson and Collins coming into the post office. He recalled Collins getting change from him for use in the copy machine and that Collins used the copy machine and that after using the copy machine Collins came to the front window and purchased the envelope."

At trial, Johnson's defense counsel asserted that this statement contradicted Raasch's testimony on direct examination, because, he alleged, the statement did not portray the defendant Johnson as an active participant in the purchase of the envelope. The following excerpt from the cross examination of Raasch reveals the defense counsel's efforts to focus on the statement:

"Q. ... I will show you what has been marked as Defendant's Exhibit 105 and direct your attention to the middle of Page 7 starting with the line 'October 10, 1990' and going through the end of the statement and I would just ask you read that for a moment.

. . . . .

A. Sir, how much of this do you want me to read?

Q. Just read it to yourself and then I'll ask you—

A. How much of it? All of it?

Q. Yes. Read from the middle of Page 7 starting with the line 'On October 10, 1990 at about 7:50 a.m. Ducommun met with Donovan Raasch.'

MR. BACH: [United States Attorney]: I'm going to object on grounds of hearsay and improper impeachment.

THE COURT: Sustained. Next question, Mr. Hildebrand [defense counsel].

Q. You testified previously, Mr. Raasch, that you had read this statement, is that correct?

A. Yes.

Q. Were there any errors in your statement?

MR. BACH: Objection.

THE COURT: Ground?

MR. BACH: Improper impeachment, hearsay.

THE COURT: Sustained.

Q. Mr. Raasch, did you sell the envelope to Dorothy Johnson or did you sell it to Mr. Collins?

A. I believe she picked it up and he paid for it.

. . . . .

MR. HILDEBRAND: Your honor, I'd move the introduction of Exhibit 105 from the middle of Page 7 to—through Page 8.

THE COURT: Any objection?

MR. BACH: Objection, hearsay.

THE COURT: Sustained.

MR. HILDEBRAND: I would like to move it into evidence as evidence of his statement and not for the truth thereof.

THE COURT: The Court will reserve [its ruling].

MR. HILDEBRAND: Thank you, Mr. Raasch. I have nothing further.

. . . . .

THE COURT: The witness may be excused.

After Raasch left the stand, defense counsel stated that he would not recall the witness. During the examination of investigator Ducommun, defense counsel moved again for the admission of Raasch's state-

ment. The court reserved its ruling once again.

Later in the trial, the district court ruled that it would not allow Raasch's statement to be introduced as evidence. In comments from the bench and in its March 27, 1990 order denying the defendant's post-verdict motions, the district court explained that it sustained the government's objections to defense counsel's questions to Raasch about the statement because they were "overly broad and improperly phrased for impeachment purposes." Once Raasch left the stand, the district court explained, Fed. R.Evid. 613(b) barred the admission of the statement because "the appropriate foundation had not been laid by questions to Raasch." Under 613(b),

"... [e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same ... or the interests of justice otherwise require."

Raasch was not recalled to allow for further cross examination because he was no longer under subpoena and had already left the courtroom by the time of the ruling. As we noted above, defense counsel had indicated after its questioning of Raasch that it would not recall him to the stand.

■ On appeal, Johnson argues that the district court erred by improperly limiting the cross-examination of Raasch. She argues that the question, "[w]ere there any errors in your statement?", should have been allowed by the judge. Johnson maintains that the question would have provided a basis for specific follow-up questions focusing on the issue of the envelope sale. These questions, she argues, would have allowed Raasch an opportunity to explain any alleged inconsistencies between his testimony and his statement, thus meeting the requirements of Rule 613(b).

The purpose of Rule 613(b) is to allow a lawyer to ask a witness whether he made a certain statement and, "[i]f the witness answers 'no', the lawyer can then try to prove that the witness indeed made the statement, but the witness must at that point be given an opportunity to explain or deny it,

i.e. to rebut the cross-examiner's proof." *United States v. Marks*, 816 F.2d 1207, 1210–1211 (7th Cir.1987). *See also Gong v. Hirsch*, 913 F.2d 1269, 1274 (7th Cir.1990) (insufficient foundation laid to admit allegedly impeaching letter when witness was not afforded an opportunity to explain alleged inconsistent statement in the letter).

In the instant case, the district court was doubtless correct when it noted that the best way for defense counsel to have confronted Raasch with the alleged inconsistency would have been to have asked him directly whether he told investigator Ducommun that he sold the envelope to Collins. Defense counsel's failure to ask this specific question meant that the alleged inconsistency was never squarely presented for Raasch's—or the district court's—consideration. Simply asking the overly broad question, "[w]ere there any errors in your statement?", was insufficient to focus attention on the alleged discrepancy between the trial testimony and the statement. Defense counsel should have persevered and asked the specific question, even after the district court sustained the objection to the broad question.

We need not decide, however, if the district court abused its discretion in ruling on the 613(b) question because we find that any error committed was harmless. Fed. R.Crim.P. 52(a) provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." In considering whether a nonconstitutional error is harmless,

" '[o]ur task is to gauge what effect the error had or reasonably may have had upon the jury's decision.' *United States v. Zapata*, 871 F.2d 616, 622 (7th Cir. 1989).... Only if we are convinced that the error did not influence the jury or had only a very slight effect, and can so say with fair assurance, should we hold the error as harmless. *United States v. Shackleford*, 738 F.2d 776, 783 (7th Cir. 1984)."

*United States v. Canino*, 949 F.2d 928, 939 (7th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1940, 118 L.Ed.2d 546 (1992). *See also United States v. Beasley*, 809 F.2d

1273, 1280 (7th Cir.1987) (a non-constitutional error is harmless unless it results in actual prejudice because it "had substantial and injurious effect or influence in determining the jury's verdict") (quoting *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986)).

Johnson argues that the exclusion of Raasch's statement from evidence was not harmless because the statement would have impeached Raasch's testimony against the defendant. We disagree with Johnson's appraisal of Raasch's testimony and statement. On direct examination, Raasch testified that "they [Johnson and Collins] purchased the envelope." On cross examination, Raasch stated, "I believe she picked it up and he paid for it." In the allegedly impeaching statement, Ducommun records Raasch as saying that he "sold to Collins a hologrammed stamped envelope" and that Johnson "was in the company of Collins" at the post office.

Raasch's statement is not in conflict with his testimony. Raasch's testimony on direct and cross-examination described Johnson and Collins purchasing the envelope together, with Collins paying the clerk and Johnson accepting the envelope. According to the statement, Ducommun questioned Raasch about envelopes "*sold* by the post office" and asked if Raasch "*sold* either [Johnson or Collins] an envelope the previous week." (emphasis added). To these questions, Raasch responded that he "sold to Collins a hologram stamped envelope" and that Collins "purchased the envelope." We find no contradiction in the fact that Raasch, in one account of an event (the statement), said he "sold" an envelope to Collins, the customer who handed him the currency and who was accompanied by Johnson at the post office, and, in another account of the same event (his testimony), recalled handing the envelope to Johnson while generally characterizing the occurrence as one in which "they [Johnson and Collins]" purchased the envelope.

Raasch's testimony provided other details completing the picture of Johnson's activities at the post office. None of these additional details contradict the account recorded by Ducommun. Raasch testified that Johnson and Collins came to his window and that she asked for the envelope. Raasch testified that he asked her which size envelope, and she responded "large". He remembered handing Johnson the envelope, Johnson turning the envelope over and looking at the unusual hologram stamp. And he described her accompanying Collins to the work tables and the photocopying machine as the pair walked around the post office. This detailed account of Johnson's participation in the purchase of the envelope is consistent with Raasch's statement to Ducommun that he "sold" the envelope to Collins, and that Johnson was "in [Collins'] company" at the post office. We are convinced that the admission of the statement into evidence would not have influenced the jury's verdict and thus that any error was harmless.

We reject the importance the defendant attaches to one discrepancy between Raasch's statement and his testimony. In his statement, Raasch asserted that Collins purchased the envelope after he had gone over to the copying machine, while in his testimony he recalled that the copying was done after the purchase of the envelope. Johnson argues that this divergence could have been used to impeach Raasch's ability to accurately recollect the happenings at the post office. We are of the opinion that the jury would not have been influenced to disbelieve Raasch simply because the sequence of events was slightly different in his two accounts. The thrust of his testimony was that Collins and Johnson acted jointly at the post office to purchase and retrieve the envelope; slight errors in the chronology were insignificant.

Fortifying our view that the exclusion of the statement was harmless is other evidence presented at trial implicating Johnson in the crime. Johnson was observed by law enforcement officials on two occasions passing by the Go–Mart and, as the car driven by Collins "noticeably" slowed, turning her head, along with Collins, in the direction of the dumpster where the letter had instructed Nyquist to leave the money. This evidence strongly supports the theory

that Johnson knew of the planned extortion, despite her denials. Further casting doubt on Johnson's protestations of innocence was the fact that she lied twice when interviewed by investigators. She asserted that she had passed the Go–Mart only once on the day of her arrest and she claimed that she had not been in the Ladysmith post office in more than a week. Two law enforcement officials saw her ride as a passenger in the green Plymouth which passed the Go–Mart twice on the afternoon of her arrest, and Raasch, who had known Johnson for 20 years, testified that the defendant, just one or two days before her arrest, was in the Ladysmith post office in the company of Collins, the person whom, the defense stipulated, wrote the threatening letter. All this evidence, combined with our conclusion that Raasch's statement did not conflict with his courtroom testimony, persuade us that any error committed in refusing to admit the statement into evidence was harmless.

### III.

The above analysis also leads us to conclude that the district court action in denying defendant's post verdict motions was proper. Johnson argues on appeal that her motion for acquittal should have been granted because insufficient evidence was presented at trial to demonstrate that she caused to be mailed the threatening communication or that she intended to extort money from Nyquist. We will uphold a guilty verdict in the face of a sufficiency of the evidence challenge so long as *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In conducting this analysis, we view the evidence in the light most favorable to the government, and defer to all reasonable inferences drawn by the jury. *United States v. Ashford*, 924 F.2d 1416, 1424 (7th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 98, 116 L.Ed.2d 69 (1991).

As we recounted above, the evidence presented at trial implicated Johnson in the purchase of the envelope sent to Nyquist and in the surveillance of the planned drop site for the extorted money. Johnson also lied when questioned by the police about the events surrounding the crime. The evidence against her was more than sufficient to convict her beyond a reasonable doubt of causing (along with Collins) to be mailed the threatening letter in an attempt to extort money from Nyquist.

■ Johnson makes a two sentence argument in her brief that her conviction should be reversed because it was stipulated at trial that Collins wrote the threatening letter. It is true that *United States v. Reynolds*, 532 F.2d 1150, 1155 (7th Cir. 1976) cited approvingly to *Petschl v. United States*, 369 F.2d 769, 770 (8th Cir.1966), which listed authorship as an element of § 876 offenses. However, in *United States v. Khorrami*, 895 F.2d 1186, 1192 n. 2 (7th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 522, 112 L.Ed.2d 533 (1990), we noted, without resolving the question in this circuit, the emerging consensus against considering authorship an essential element of 18 U.S.C. § 876. *See United States v. Henderson*, 961 F.2d 880 (9th Cir.1992); *United States v. Davis*, 926 F.2d 969, 971 (10th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2036, 114 L.Ed.2d 121 (1991); *United States v. Blankenship*, 870 F.2d 326, 330–31 (6th Cir.1988), *cert. denied*, 489 U.S. 1068, 109 S.Ct. 1347, 103 L.Ed.2d 815 (1989); *United States v. Bloom*, 834 F.2d 16, 18–19 (1st Cir.1987); *United States v. Stotts*, 792 F.2d 1318, 1323–24 (5th Cir. 1986). We find the reasoning of these decisions persuasive, especially in light of the fact that the language of the statute does not make mention of any authorship element, instead simply requiring that a defendant knowingly cause to be delivered a threatening letter in the U.S. mails.[1] As the Fifth Circuit stated:

> "[s]imple logic dictates that a requirement that the accused write the letter is

---

1. The statute provides, in pertinent part, that "[w]hoever, with intent to extort from any person any money ... causes to be delivered [by the Postal Service] ... any communication containing any threat ... to injure the person of the addressee ... shall be fined not more than $5,000 or imprisoned not more than 20 years, or both." 18 U.S.C. § 876.

not an element of a § 876 violation. If this element were required, then the application of this statute easily could be defeated. For example, if A wrote a threatening letter and B mailed the letter without A's consent, neither A nor B would have performed elements necessary to prove a violation of § 876. There would also be difficult questions involving liability where an accused, instead of writing the letter by hand, had cut out letters from magazines and pasted them together into an extortion note, or had purchased a prewritten extortion note from another. There is, of course, no indication that Congress intended to allow any of these modi operandi to defeat the application of the statute."

*Stotts*, 792 F.2d at 1323–24. We agree, and hold today that authorship is not an essential element of 18 U.S.C. § 876 offenses.

We also reject Johnson's contention that the district court should have granted her motion for a new trial pursuant to Fed. R.Crim.P. 33 which directs that new trials should be granted when they are "required in the interest of justice." Because the evidence presented was sufficient to sustain a conviction and because any error committed by the district court was harmless, Johnson did not merit a new trial.

### IV.

Johnson also challenges her sentence, which the district court calculated pursuant to the United States Sentencing Guidelines (U.S.S.G.), on two grounds. First, Johnson claims that the district judge erred in applying to her case § 2B3.2, "Extortion by Force or Threat of Injury or Serious Damage," with its base offense level of 18, when it should have applied § 2A6.1, "Threatening Communications," with its base offense level of 12. The district court's determination of which Guideline section to apply is a question of law we review *de novo*. *United States v. Bigelow*, 914 F.2d 966, 973 (7th Cir.1990), *cert. denied, Vaughn v. United States*, — U.S. ——, 111 S.Ct. 1077, 112 L.Ed.2d 1182 (1991). The Guidelines provide that defendants (like Johnson) convicted of violating 18 U.S.C. § 876 may be sentenced under § 2A6.1 or § 2B3.2 (or several other sections). The task of the district court judge is to determine which of the sections is most applicable to a particular defendant's offense. U.S.S.G. § 1B1.2(a).

In this case, the district court correctly applied § 2B3.2 because the defendant was not convicted of merely making "Threatening Communications", the caption name of § 2A6.1. Johnson was convicted of attempting to force Nyquist to give her and Collins $25,000 by threatening to harm Nyquist and/or her property, conduct which amounts to "Extortion by Force or Threat of Injury or Serious Damage", the caption title of § 2B3.2. The commentary to § 2B3.2 provides that,

> "[t]his guideline applies if there was any threat, express or implied, that reasonably could be interpreted as one to injure a person or physically damage property.... An ambiguous threat, such as 'pay up or else,' ... ordinarily should be treated under this section."

U.S.S.G. § 2B3.2 (comment.) n. 2. Pay up or your house will be "blown up" and you "can forget about your ... life" was the unambiguous threat Johnson was convicted of helping to mail to Nyquist. Whether she actually intended to carry out the threat is irrelevant. *Bigelow*, 914 F.2d at 974. Johnson is incorrect to argue that her case closely resembles the facts of *United States v. Fonner*, 920 F.2d 1330, 1331 (7th Cir.1990), where § 2A6.1 was applied, because *Fonner* involved a threat, but no extortion attempt.

In making her argument that § 2B3.2 is inapplicable to her case, Johnson admits that the language of that section's Application Note 2 (quoted above) "would cover the conduct for which" she was convicted. Appellant's Brief at 23. Nevertheless, she contends she should have been sentenced under § 2A6.1 because of the "level of her participation in the crime." *Id.* This is really an argument in support of Johnson's second challenge to her sentence, her claim that the district court

should have decreased her offense level pursuant to § 3B1.2, "Mitigating Role."

Section 3B1.2(a) directs district courts to reduce by four levels the offense level of defendants found to be minimal participants in the criminal activity. This subsection is "intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group," as evidenced by their "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others." U.S.S.G. § 3B1.2 (comment.) n. 1. The Guidelines expressly note that this downward adjustment should be used ·"infrequently." *Id.* n. 2. Under § 3B1.2(b), the district court is to reduce by two the offense level of defendants found to be minor participants, defined as "any participant who is less culpable than most other participants, but whose role could not be described as minimal." *Id.* n. 3. Defendants falling somewhere between minimal and minor participants are to be given three level reductions. § 3B1.2. Section 3B1.2 adjustments are available only for defendants "substantially less culpable than the average participant." U.S.S.G. § 3B1.2 (comment.); *United States v. Davis*, 938 F.2d 744, 746 (7th Cir.1991). District courts' determinations pursuant to § 3B1.2 "are heavily dependent upon the facts of the particular case," U.S.S.G. § 3B1.2 (comment.), and we review them for clear error only. *United States v. Hagan*, 913 F.2d 1278, 1283 (7th Cir.1990).

The district court found that Johnson was an "equal participant with full understanding and awareness" of the crime she committed with Collins. In making this determination, the court emphasized that Johnson and Collins were in the post office together for about 20 minutes, moving from the clerk's window, to the work tables, to the copying machine, making it unlikely that Johnson was unaware of the preparation of the threatening letter sent to Nyquist. The court also concluded that Johnson knew that Collins was attempting to pick up the dummy extortion package when she was just across the street at the grocery and had been with him in area around the Go-Mart for over an hour, and had been seen looking in the direction of the dumpster as she rode by in the car driven by Collins. The district court stated that Johnson's claim that she was less culpable than Collins was made less believable by the fact that she and Collins were convicted of theft by swindle in 1987. The pair had been managing apartments in Minneapolis, Minnesota when they contrived to swindle over $3,000 from the apartment owners. The close relationship between the two—Johnson and Collins lived together for 12 years before their arrest on the instant charge—also made it unlikely that Johnson was not fully aware of the extortion attempt or that she was less culpable than Collins. Given all these circumstances, it was not clear error for the district court to refuse to find that Johnson was a minimal or minor participant in the scheme to extort money from Nyquist.

## V.

For the foregoing reasons, the defendant Dorothy Johnson's conviction and sentence are AFFIRMED.