**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Irving RUBIN, Robert Bonczyk, and
James Heffernan, Defendants–
Appellants.**

**Nos. 93–1076, 93–1077.**

United States Court of Appeals,
Seventh Circuit.

Argued March 31, 1993.

Decided June 30, 1993.

Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, John J. Powers, III, Dept. of Justice, Nancy C. Garrison (argued), Dept. of Justice, Antitrust Div., Appellate Section, Washington, DC, for U.S. in Case No. 93–1076.

James R. Ferguson (argued), Sonnenschein, Nath & Rosenthal, Chicago, IL, for Irving Rubin.

Gregory C. Jones, Jay R. Hoffman, Grippo & Elden, Chicago, IL, for Irving Rubin and Robert Bonczyk.

Fred Foreman, U.S. Atty., Crim. Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, John J. Powers, III, Nancy C. Garrison (argued), Dept. of Justice, Antitrust Div., Appellate Section, Washington, DC, for U.S. in Case No. 93–1077.

James R. Ferguson (argued), Sonnenschein, Nath & Rosenthal, Robert M. Stephenson, Theodore T. Poulos, Cotsirilos, Stephenson, Tighe & Streicker, George Murtaugh, Jr., Chicago, IL, for James P. Heffernan.

Before CUDAHY, MANION, and TIMBERS,* Circuit Judges.

MANION, Circuit Judge.

The United States of America ("government") charged Irving Rubin, Robert Bonczyk, and James Heffernan ("defendants") with one count of criminal antitrust conspiracy under 15 U.S.C. § 1 for fixing the prices of new steel drums used to store liquid products and with two counts of mail fraud under

* Hon. William H. Timbers of the United States Court of Appeals for the Second Circuit is sitting    by designation.

18 U.S.C. § 1341 for concealing and making false statements to cover their collusion. The district court determined that Sentencing Guidelines section 2R1.1 ("Antitrust Offenses") applied to the price-fixing count and that section 2F1.1 ("Offenses Involving Fraud or Deceit") applied to the mail fraud counts. After grouping the offenses, the district court sentenced the defendants under section 2F1.1, which gave them a greater penalty than they would have received had the court applied section 2R1.1 to each of the three counts. On appeal, the defendants challenge only the court's application of section 2F1.1 to their mail fraud counts. We vacate the sentences and remand for further sentencing consistent with this opinion.

## I. Background

The defendants worked in the steel drum manufacturing business. The drums the defendants manufactured were used mainly for the packaging of chemical and petroleum products. The drums ranged in size from thirteen to fifty-seven gallons. Rubin was Chairman of the Board and Chief Executive Officer of Container Products, Inc., and Bonczyk was its Executive Vice President. Heffernan was Vice President of Sales and Marketing of Astro Container Company.

In a superseding indictment, the government charged the defendants and others with one count of criminal price-fixing and with two counts of mail fraud. In count one, the government charged the defendants with entering into and engaging in "a combination and conspiracy ... to suppress competition by fixing prices of new steel drums offered for sale to customers in Ohio, Michigan, western New York, western Pennsylvania, and West Virginia" (the "East Central Region"). This conspiracy to fix prices began in October 1988 and lasted through March 1990. To form and execute their conspiracy, the government charged that the defendants, among other things:

(a) agreed to increase prices of new steel drums;

(b) agreed to adopt published list prices for new steel drums;

(c) exchanged with one another price lists and other price information;

(d) issued price announcements, price lists, bids and quotations in accordance with agreements reached;

(e) met in a Holiday Inn in the Cleveland, Ohio area on or about December 21, 1988, at a Radisson Hotel in the Columbus, Ohio area on or about January 26, 1989, at the Union League Club in Chicago, Illinois on or about February 10, 1989, and elsewhere and at other times, for the purpose of discussing and agreeing upon prices and price lists for new steel drums;

(f) telephoned or otherwise contacted one another to discuss, agree upon, and convey agreements regarding prices, price lists, bids and quotations for new steel drums, and to implement and police such agreements; and

(g) organized and maintained a trade association known as the Midwest Steel Drum Manufacturer's Association for the purpose of promoting, facilitating, policing, concealing, covering-up, and otherwise furthering, aiding and abetting the aforesaid combination and conspiracy.

In counts two and three, the government charged the defendants with devising, intending to devise, and participating "in a scheme and artifice to defraud purchasers of new steel drums offered for sale [in the East Central Region] and to obtain money and property from such purchasers, by means of false and fraudulent pretenses and representations." The government charged that part of the defendants' scheme and artifice to defraud was to engage in the same type of conduct, enumerated above as (a) through (g), that they had engaged in in their price-fixing scheme. The government further charged that the defendants and their co-schemers "made false statements and representations to purchasers of new steel drums in the East Central Region, and failed to inform such purchasers, about the noncompetitive and collusive nature of prices, price lists, bids and quotations for new steel drums." Lastly, the government charged that the defendants and their co-schemers knowingly caused to be mailed a price list to a customer and one to another co-schemer.

Rubin and Bonczyk pleaded guilty to all counts. Heffernan went to trial, and the jury found him guilty as charged. The defendants do not appeal their convictions or the application of section 2R1.1 to count one. They appeal only their sentences under the two counts for mail fraud.

At the sentencing hearing, the defendants argued that the district court should apply the Antitrust Offenses Guideline, section 2R1.1, to their mail fraud counts, rather than the Fraud or Deceit Guideline, section 2F1.1, because the conduct involved in the mail fraud counts was incidental to the price-fixing and designed to conceal their conspiracy. Relying on Application Note 13 to section 2F1.1, the defendants argued that because the underlying conduct in the mail fraud counts essentially dealt with their anticompetitive scheme, section 2R1.1, and not section 2F1.1, "more aptly" applied to their underlying conduct. In contrast, the government argued chiefly that the Sentencing Guidelines as a whole and Application Note 13 required the district court to apply the Guideline section that covered the more serious offense committed. Because mail fraud is a more serious offense than price-fixing, the government asserted that the district court should apply section 2F1.1 because it yielded a higher offense level and a greater sentence. The district court agreed with the government's analysis of the issue. The court concluded that the defendants committed a price-fixing violation and two mail fraud violations. It applied section 2R1.1 to the price-fixing count and section 2F1.1 to the mail fraud counts. After grouping the counts, the court sentenced the defendants under section 2F1.1, not section 2R1.1. Section 2F1.1 provided a greater term of imprisonment than did section 2R1.1.

## II. Analysis

On appeal, the government has abandoned for the most part the main argument it made to the district court at sentencing that, in selecting the appropriate Guideline, the court should apply the Guideline that resulted in the "more onerous" sentence; the district court relied on that argument in reaching its sentencing decision. The government now agrees with the defendants that the sole issue on appeal is whether the district court erred in applying the Fraud and Deceit Guideline, section 2F1.1, instead of utilizing Application Note 13 and applying the Antitrust Offenses Guideline, section 2R1.1, to the conduct with which the government charged the defendants in counts two and three of the indictment. We have jurisdiction pursuant to 28 U.S.C. § 1291 to consider this issue.

In sentencing a defendant, a district court must "[d]etermine the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of conviction (*i.e.*, the *offense conduct* charged in the count of the indictment or information of which the defendant was convicted)." United States Sentencing Commission, *Guidelines Manual*, § 1B1.2(a) (Nov. 1989) ("U.S.S.G.") (emphasis added). In this case, the defendants were convicted of two counts of violating 18 U.S.C. § 1341 (Mail Fraud). The Statutory Index to the 1989 Guidelines (the Guidelines under which the district court sentenced the defendants) listed only one Guideline provision as applicable to the offense of violating section 1341: section 2F1.1 for "Offenses Involving Fraud or Deceit." U.S.S.G.App. A at A.12 (Nov. 1989). Although the Guideline listed in the Statutory Index is ordinarily applied at sentencing, *id.* App. A, intro. (Nov.1989), Application Note 13 to section 2F1.1 states that if the indictment "establishes an offense *more aptly covered* by another guideline, apply that guideline rather than § 2F1.1." *Id.* § 2F1.1, comment. (n. 13) (Nov. 1989) (emphasis added).[1] Thus, according to Applica-

---

1. Application Note 13 states in full:

   Sometimes, offenses involving fraudulent statements are prosecuted under 18 U.S.C. § 1001, or a similarly general statute, although the offense is also covered by a more specific statute. Examples include false entries regarding currency transactions, for which § 2S1.3 would be more apt, and false statements to a

   customs officer, for which § 2T3.1 likely would be more apt. In certain other cases, the mail or wire fraud statutes, or other relatively broad statutes, are used primarily as jurisdictional bases for the prosecution of other offenses. For example, a state arson offense where a fraudulent insurance claim was mailed might be prosecuted as mail fraud. *Where the indict-*

tion Note 13, a defendant convicted of mail fraud can be sentenced under a different Guideline if the conduct comprising the mail fraud is "more aptly" punished under another Guideline, even one not listed in the Statutory Index for the convicted offense. *Cf. United States v. Carrillo–Hernandez*, 963 F.2d 1316, 1317–18 (9th Cir.1992) (applying Application Note 13); *United States v. Castaneda–Gallardo*, 951 F.2d 1451, 1452–53 (5th Cir.) (same), *cert. denied*, —— U.S. ——, 112 S.Ct. 1990, 118 L.Ed.2d 587 (1992); *United States v. Obiuwevbi*, 962 F.2d 1236, 1242 (7th Cir.1992) (same).

Until recently, the authoritative weight a court needed to give the commentary to the Guidelines was disputed among the various courts of appeals. Unlike some other circuits, we recognized that "[a]pplication notes are entitled to substantial weight and should be followed unless they conflict with the text" of the Guidelines. *United States v. Woods*, 976 F.2d 1096, 1102 (7th Cir.1992) (citations omitted). The United States Supreme Court has now resolved the conflict among the circuits: Guideline commentary "that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, the guideline." *Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993). In particular,

> Commentary which functions to "interpret [a] guideline or explain how it is to be applied" controls, and if failure to follow, or a misreading of, such commentary results in a sentence "select[ed] . . . from the wrong guideline range," that sentence would constitute "an incorrect application of the sentencing guidelines" under 18 U.S.C. § 3742(f)(1).

*Id.* at 1917–18 (citations omitted). What has remained unchanged is that a "district court's determination of which Guideline sec-

tion to apply is a question of law we review *de novo*." *United States v. Johnson*, 965 F.2d 460, 468 (7th Cir.1992).

Based on the authoritative nature of Application Note 13, we determine that although the district court properly selected the Fraud and Deceit Guideline, section 2F1.1, from the Statutory Index, it erred in not applying the Antitrust Offenses Guideline, section 2R1.1, which more aptly covers the conduct with which the government charged the defendants in counts two and three of the indictment. Even though the defendants pleaded guilty, or were convicted, of mail fraud under counts two and three, the defendants' fraud in those two counts was designed to conceal and further their price-fixing scheme. The mail fraud was not separable from the price-fixing conspiracy as it would have been, for example, had the defendants made fraudulent statements in letters concerning the quality or capacity of the new steel drums. In this case, the line between price-fixing and mail fraud is blurred because the government charged the defendants with almost the identical conduct in all three counts. Specifically, the government charged the defendants in the price-fixing count with, among other things, issuing price lists to customers, exchanging price lists with each other, and taking steps to cover-up and conceal their price-fixing scheme. These charges are reflected almost identically in the two mail fraud counts.

The intent of the defendants was to fix prices. The nature of their price-fixing scheme was to set a price for the new steel drums, to sell the new steel drums at that fixed price, and to keep secret their agreement to fix those prices. To achieve those ends, the defendants had to advertise their prices—hence the mailings—and had to conceal their collusion—hence the misrepresentations. As the Supreme Court has noted in

---

*ment or information setting forth the count of conviction (or a stipulation as described in § 1B1.2(a)) establishes an offense more aptly covered by another guideline, apply that guideline rather than § 2F1.1. Otherwise, in such cases, § 2F1.1 is to be applied, but a departure from the guidelines may be considered.*
United States Sentencing Commission, *Guidelines Manual*, § 2F1.1, comment. (n. 13) (Nov.

1989) ("U.S.S.G.") (emphasis added). Application Note 13 conveys the Sentencing Commission's recognition that the broad nature of such general fraud statutes as 18 U.S.C. § 1001 (False Statements) and 18 U.S.C. § 1341 (Mail Fraud) sometimes apply to offense conduct that "is also covered by a more specific statute." *Id.*

the past: "For every conspiracy is by its very nature secret; a case can hardly be supposed where men concert together for crime and advertise their purpose to the world. And again, every conspiracy will inevitably be followed by actions taken to cover the conspirators' traces." *Grunewald v. United States,* 353 U.S. 391, 402, 77 S.Ct. 963, 972, 1 L.Ed.2d 931 (1957); *see also Texas v. Allan Constr. Co.,* 851 F.2d 1526, 1530–31 (5th Cir.1988) ("It is true of any price-fixing conspiracy that 'it must remain concealed to be successful.' Because price-fixing is illegal, public knowledge of the activity usually ends the agreement. This deceptive aspect of the conspiracy is . . . intended solely to 'cover up' the illegal act."); 2 Phillip Areeda & Donald F. Turner, *Antitrust Law* ¶ 325, at 124 (1978) (stating that the participants to most clear-cut price-fixing agreements make elaborate efforts to disguise their activity, which is started and continued outside of the public's view). As such, the mail fraud allegations in this case directly relate to the price-fixing allegations; they are a natural extension of the conspiracy to fix the prices of the new steel drums and are not a separate offense.

In their briefs on appeal and at oral argument, the defendants raised an analogy argument between Application Note 13 and Guidelines section 2C1.7 ("Fraud Involving Deprivation of the Intangible Right to the Honest Services of Public Officials; Conspiracy to Defraud by Interference with Governmental Functions"). U.S.S.G. § 2C1.7 (Nov. 1991). Section 2C1.7 was added to the Guidelines in 1991 after the defendants' offense conduct and does not apply to their charged offenses; the defendants concede that, but raise the argument to further support their position that Application Note 13 should be applied in this case. The government never fully responded to this analogy argument.

Section 2C1.7(c)(4) provides: "If the offense is covered more specifically under § 2C1.1 (Offering, Giving, Soliciting, or Re-

ceiving a Bribe; Extortion Under Color of Official Right), § 2C1.2 (Offering, Giving, Soliciting, or Receiving a Gratuity), or § 2C1.3 (Conflict of Interest) [than it is under section 2C1.7], apply the offense guideline that *most specifically covers* the offense." *Id.* § 2C1.7(c)(4) (Nov. 1991) (emphasis added). In the Statutory Index to the 1991 Guidelines and to the current Guidelines, section 2C1.7 and section 2F1.1 are the only two Guideline sections noted under violations of 18 U.S.C. § 1341 (Mail Fraud). *Id.* App. A at 400 (Nov. 1992); *id.* App. A at 390 (Nov. 1991). According to the defendants, section 2C1.7(c)(4) adopts for "intangible rights" fraud the same principle that Application Note 13 adopts for all other violations of section 1341.

In advancing their analogy argument, the defendants contend: "where the alleged fraud consists solely of the concealment of a more specific crime—and where such concealment is inherent in the nature of the crime—then [under either section 2C1.7(c)(4) or Application Note 13] the court should apply the guideline relating to the underlying offense." We find merit to the analogy argument for two reasons. First, it helps resolve the contention the government makes on appeal that the Antitrust Offenses Guideline, section 2R1.1, cannot apply here because price-fixing and mail fraud have different elements. Under section 2C1.7(c)(4), a district court can apply a more specific Guideline to an "intangible rights" fraud charge, even though the applied Guideline addresses conduct involving elements different from the offense of conviction. Second, the analogy argument helps resolve the assertion the government made at sentencing that the district court should apply the Guideline that produces the "more onerous" sentence. Under section 2C1.7(c)(4), the application of a more specific Guideline may result in a lower sentence than the one imposed for "intangible rights" fraud. Application Note 13 does not preclude a similar result in either of these two situations.[2]

---

2. We also note the government's reliance on Application Note 5 to Guidelines section 1B1.1: "Where two or more guideline provisions appear equally applicable, but the guidelines authorize the application of only one such provision, use the provision that results in the greater offense level." U.S.S.G. § 1B1.1, comment. (n. 5) (Nov. 1989). Application Note 5 does not apply here

In sum, we hold that the defendants' mail fraud was directly related to the price-fixing scheme and was not a separate course of conduct. It had no other purpose except to maintain and continue the price-fixing conspiracy. The nature of the conduct charged in counts two and three dealt with price-fixing rather than with mail fraud. Therefore, Application Note 13 requires that the defendants be sentenced under the Antitrust Offenses Guideline, section 2R1.1, and not under the Fraud or Deceit Guideline, section 2F1.1, even though the Statutory Index lists section 2F1.1 as the ordinarily applicable Guideline for offenses under 18 U.S.C. § 1341. U.S.S.G. § 2F1.1, comment. (n. 13) (Nov. 1989); *see also id.* App. A, intro., at A.1 (Nov. 1989) (noting that in atypical cases the Guideline listed in the Statutory Index will be inappropriate because of the particular conduct involved in the underlying offense; in such a case, the district court should "use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted").

We stress that our holding in this case is not a bright-line ruling applicable to all indictments that charge price-fixing and mail fraud. Our focus here has been on this indictment and the acts with which the government charged the defendants. Under a different indictment charging price-fixing and mail fraud, a district court could conceivably consider Application Note 13 and properly determine that section 2F1.1 more aptly covers the conduct charged as mail fraud.

### III.  Conclusion

The district court erred in applying section 2F1.1 to the mail fraud counts. Section 2R1.1 more aptly covers the type of conduct with which the government charged the defendants in those two counts. Consequently, the defendants' sentences are VACATED, and the matter is REMANDED for resentencing under section 2R1.1.

because § 2R1.1 and § 2F1.1 are not "equally applicable" to the mail fraud counts. In light of

Application Note 13, § 2R1.1 applies and § 2F1.1 does not.